**UNITED STATES of America, Plaintiff,**

**v.**

**Cruz Joaquin VISINAIZ, Defendant.**

**No. 2:03–CR–00701 PGC.**

United States District Court, D. Utah, Central Division.

Nov. 16, 2004.

See, also, 96 Fed.Appx. 594.

Carlos Esqueda, Salt Lake City, UT, for Plaintiff.

Theodore Weckel, Salt Lake City, UT, for Defendant.

## MEMORANDUM OPINION AND ORDER AWARDING RESTITUTION

CASSELL, District Judge.

On August 26, 2004, defendant Cruz Visinaiz was convicted by the jury of second-degree murder in the death of Ms. Clara M. Jenkins and is now before the court for sentencing. In federal criminal cases—including homicide cases—the court is required to award restitution to the victim for lost income resulting from the offense under the Mandatory Victim Restitution Act.[1] Under this Act, judges are charged with determining all disputed facts relevant to a calculation of restitution, including the determination of the victim's lost income. Because an award of restitution may involve solely judicial fact-finding, the MVRA is arguably open to constitutional attack in the wake of the Supreme Court's decision in *Blakely v. Washington*[2] last Term that the Sixth Amendment requires *jury* fact-finding in the application of sentencing guidelines. Unsurprisingly, Mr. Visinaiz makes just this attack in his briefing on the issue.

This court previously concluded in *United States v. Croxford*[3] that *Blakely* does not extend to requiring jury fact-finding in determining restitution under the MVRA. Since the *Croxford* ruling, the Tenth Circuit has provided instruction on this issue and the court has had the opportunity to review the briefing in this case. In light of this new information and other research conducted by the court, the court reaffirms its earlier ruling that jury fact-finding is not required for restitution awards. The court first reaffirms its conclusion that the MVRA requires an award of lost income in restitution cases. The court next con-

---

1. 18 U.S.C. §§ 3556, 3663A–3664.

2. —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

3. 324 F.Supp.2d 1230 (D.Utah 2004).

cludes that the Sixth Amendment right to a jury trial, as expansively interpreted in *Blakely*, does not extend to restitution awards. Two separate justifications support this conclusion. First, restitution is not a penalty and therefore is simply not covered by the Sixth Amendment. Second, as a matter of historical practice dating to well before the drafting of the Constitution, restitution has traditionally been determined by the judge, not the jury. In light of this history, the Sixth Amendment should not be read as creating a need for jury fact-finding on restitution issues.

## FACTUAL BACKGROUND

Ms. Jenkins was originally reported missing by her son, Johnny Jenkins, Sr., on April 15, 2003. Mr. Visinaiz had contacted Mr. Jenkins wondering where Ms. Jenkins was and later told Mr. Jenkins that he had last seen Ms. Jenkins shortly after midnight on Saturday, April 12, 2003, when she left his house on foot following an argument. Because he was the last person to see Ms. Jenkins before she went missing, and because it was well known that the sixty-year-old Ms. Jenkins had a very hard time walking, Mr. Visinaiz became an early focus of the investigation. Ultimately, the police found Ms. Jenkins' blood splattered on the wall in Mr. Visinaiz' home and smeared on the rear hatch door of Mr. Visinaiz' van.

Ms. Jenkins' body turned up at the beginning of May, 2003, floating in the White River near Ouray, Utah. The body had evidently been weighted down: it was tied by a cord to three concrete cinder blocks. An autopsy revealed a minimum of four head fractures, and the medical examiner concluded that Ms. Jenkins had died of blunt force trauma to her head. Mr. Visinaiz then admitted that he struck Ms. Jenkins three times with a piece of firewood, but claimed it was in self-defense because Ms. Jenkins was threatening to hit him with a drinking glass. Mr. Visinaiz fur-

ther admitted that he initially hid Ms. Jenkins' body in his crawlspace and later transported it to the river where he weighted down and dumped the body. A jury convicted Mr. Visinaiz of second-degree murder in Ms. Jenkins death, and he now awaits sentencing by this court.

As a part of this sentence, the government seeks restitution for Ms. Jenkins' lost future income of $473,400. The government's calculation assumes that Ms. Jenkins would have lived another 15 years and received $1,500 per month from the Ute Tribe in retirement benefits, $650 per month in Ute Tribal dividends, $480 per month in social security income, and an average amount for Ute oil and gas dividends. Mr. Visinaiz has challenged this award, arguing that lost income awards are not proper in homicide cases and that a jury, not the court, must determine the facts underlying the award.

## LEGAL ANALYSIS

### I. The MVRA Requires Restitution for Lost Income In Homicide Cases

■ Before turning to the constitutional questions surrounding the fact-finding apparatus for restitution awards, it is useful to briefly review why restitution is required in this case. Under the MVRA, the court is obligated to award restitution for various categories of losses, including "income lost" by the victim. The MVRA directs:

> The order of restitution shall require that such defendant—
>
> . . .
>
> (2) in the case of an offense resulting in bodily injury to a victim—
>
> (A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psycho-

logical care, including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

(B) pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

(C) *reimburse the victim for income lost by such victim as a result of such offense;*

(3) in the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services.[4]

Earlier this year, the court issued an extensive opinion concluding that the lost income provision of the MVRA mandates that the court award lost income in homicide cases. In two homicide cases—*United States v. Bedonie* and *United States v. Serawop*[5]—the court explained that lost income restitution is mandatory for homicide no less than for other violent crimes. To reach any other conclusion would flout the plain language of the MVRA. The statute expressly directs judges to require a convicted defendant to pay restitution for income lost "in the case of an offense resulting in bodily injury to a victim."[6] An offense that results in death would plainly be an offense resulting in bodily injury. Death is simply the most serious form of bodily injury and in no way eliminates the appropriateness of a restitution award. Not to award lost income restitution "would defy logic and would lead to the perverse result that murderers would usually pay markedly less restitution than criminals who only assault and injury their victims."[7] Such a result would also "contradict a core purpose of restitution, which is to 'ensure that the offender realizes the damage caused by the offense and pays the debt owed to the victim as well as to society.'"[8] Moreover, the court explained, reading the statute to block lost income awards in homicide cases would conflict with the clear intention of the MVRA: to force offenders to "'pay full restitution to the identifiable victims of their crimes.'"[9] Income is plainly one of the things lost by victims when they are murdered. Finally, the court noted that the Tenth Circuit in *United States v. Checora*[10] had adopted the view that lost income restitution was appropriate in homicide cases.[11]

In this case, Mr. Visinaiz invites the court to reconsider its ruling in *Bedonie* and *Serawop* that lost income awards are required in homicide cases. The court finds that there is no good reason for reconsideration. To the contrary, a recent development since then supports the court's conclusion. In particular, legislative history of the Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act.[12] reveals that Congress endorses this court's interpretation of the MVRA.

On October 30, 2004, President Bush signed into law the new crime victims' rights act. The act recites a comprehensive list of rights for victims of crime, including "[t]he right to full and timely

---

**4.** 18 U.S.C. § 3663A(b).

**5.** 317 F.Supp.2d 1285 (D.Utah 2004).

**6.** 18 U.S.C. § 3663A(b)(2).

**7.** *Bedonie,* 317 F.Supp.2d at 1303.

**8.** *Id.* (quoting *United States v. Reano,* 298 F.3d 1208, 1212 (10th Cir.2002)).

**9.** *Reano,* 298 F.3d at 1211 (quoting S.Rep. No. 104–179, at 12 (1996), *reprinted in* 1996 U.S.C.C.A.N. 924, 925).

**10.** 175 F.3d 782 (10th Cir.1999).

**11.** *See Bedonie,* 317 F.Supp.2d at 1304.

**12.** Public Law No. 108–405, 18 U.S.C. § 3771.

restitution as provided in law." [13] During floor debate on this bill, Senator Kyl, the primary drafter, spoke regarding the "broad bipartisan consensus" underlying the law.[14] In describing the effects of the bill, Senator Kyl specifically and directly endorsed this court's holding in *Bedonie* and *Serawop*:

> I would like to turn now to restitution.... This section provides the right to full and timely restitution as provided in law. We specifically intend to endorse the expansive definition of restitution given by Judge Cassell in *U.S. v. Bedonie* and U.S. v. *Serawop* in May 2004. This right, together with other rights in the act to be heard and confer with the government's attorney in this act, means that existing restitution laws will be more effective.[15]

In light of this endorsement of the court's interpretation of the congressional statutes and for all the reasons given in its *Bedonie* and *Serawop* opinion, the court reaffirms that the MVRA requires an award of lost income in homicide cases.

## II. The Sixth Amendment Right to a Jury Trial Does Not Extend to Restitution Awards

■ Because a restitution award is required in this case, the next question that arises is what factfinding procedures the court should use in calculating the award. In particular, should the court or a jury determine the facts regarding the award? Defendant Visinaiz argues that the Sixth Amendment right to a jury trial extends to restitution awards and requires the court to submit questions surrounding the victim's lost income to a jury. In support of his position, defendant Visinaiz cites the Supreme Court's decision in *Blakely v. Washington*,[16] which held that the Sixth Amendment jury trial right extended to application of Washington's sentencing guidelines.

The court rejects his claim. Nothing in the Sixth Amendment requires jury factfinding for restitution awards. To the contrary, restitution is not a "penalty" and therefore is not subject to the Sixth Amendment jury trial right.

### A. The MVRA Requires Judicial Fact–Finding

Before turning to the constitutional question about judicial fact-finding, it is important to determine whether the statute requires judicial fact-finding. It is well settled that " 'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.' "[17] At the same time, however, "this interpretive canon is not a license for the judiciary to rewrite language enacted by the legislature." [18]

Here it is plain that the Mandatory Victims Restitution Act requires *judges* to determine restitution for the victims of violent crimes at the time of sentencing. Under 18 U.S.C. § 3664, the judge is directed to begin the process by "order[ing] the probation officer to obtain and include

**13.** 18 U.S.C. § 3771.

**14.** 150 Cong. Rec. S10910 (Oct. 9, 2004).

**15.** *Id.*

**16.** —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

**17.** *Jones v. United States*, 526 U.S. 227, 238–40, 119 S.Ct. 1215, 1222, 143 L.Ed.2d 311 (1999) (quoting *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909)).

**18.** *Salinas v. United States*, 522 U.S. 52, 59–60, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (citing *Heckler v. Mathews*, 465 U.S. 728, 741–742, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984)).

in its presentence report ... information sufficient for the court to exercise its discretion in fashioning a restitution order." [19] This report must include "a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant." [20] Significantly, the statute provides that "[a]ny dispute as to the proper amount or type of restitution shall be resolved *by the court* by a preponderance of the evidence." [21] Thus, if needed, the court is authorized to "require additional documentation or hear testimony." [22] Further, "the court may refer any issue arising in connection with a proposed order of restitution to a magistrate judge or a special master for proposed findings of fact...." [23] The court is also authorized to make findings in order to apportion restitution between different defendants in different cases: "[i]f the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount ... or may apportion liability among the defendants...." [24] As should be evident from this brief review of statutory procedures, the MVRA requires judicial fact-finding on restitution issues. Therefore, the court has no choice but to consider the constitutional challenge raised by defendant Visinaiz.

## B. Restitution and the Requirement of Jury Fact-finding Under *Blakely*

In the last five years, the Supreme Court has significantly expanded the reach of the Sixth Amendment right to a jury trial and held that judicial fact-finding as part of criminal sentencing was unconstitutional. In 2000, in the fountainhead case of *Apprendi v. New Jersey,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." [25] The most important interpretation of *Apprendi* occurred in the Supreme Court's last Term. In *Blakely v. Washington,*[26] the Supreme Court reaffirmed the *Apprendi* rule in striking down Washington's sentencing guidelines. The Court clarified further that the "statutory maximum" for *Apprendi* purposes was not the maximum sentence that could be imposed *after* additional judicial fact-finding, but rather "the maximum [the judge] may impose *without* any additional findings." [27]

*Apprendi* and *Blakely* both involved the question of determining facts that lengthened a defendant's prison sentence. The Sixth Amendment extends a right to a jury trial only to "criminal prosecutions," and after *Blakely,* a prison sentence is plainly part of a criminal prosecution. This makes some sense, because distinguishing between elements of the offense at trial and elements of a sentencing enhancement is quite difficult. As the *Blakely* majority notes, anyone who would reject the *Apprendi* rule is stuck with only two unpalatable alternatives: either (1) defer completely to the legislature's definition of what is an element of a crime versus what is an element of the sentence; or (2) try to

19.  18 U.S. § 3664(a).

20.  *Id.*

21.  18 U.S.C. § 3664(e) (emphasis added).

22.  18 U.S.C. § 3664(d)(4).

23.  18 U.S.C. § 3664(d)(6).

24.  18 U.S.C. § 3664(h).

25.  530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

26.  —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

27.  *Id.* at 2537.

distinguish sentencing regimes that somehow "go too far" based on some subjective notion of when the definition of a sentencing factor has really just become a "tail which wags the dog of the substantive offense."[28] But the question of applying *Apprendi* and *Blakely's* requirement of jury fact-finding to other components of a criminal sentence, such as an order of restitution, remained to be decided.

Before *Blakely*, courts were generally skeptical of the claim that the jury trial right ought to be extended to proceedings that bear some similarity to criminal trials. Thus, cases have rejected arguments for extending the jury trial right to such proceedings as juvenile court proceedings,[29] probation revocation hearings,[30] military courts-martial,[31] and habeas proceedings.[32] The right to a jury trial has also been denied in cases involving establishment of paternity,[33] protective orders,[34] and civil commitment proceedings.[35] And, according to one commentator, "[t]he same is true of certain proceedings ancillary to a criminal trial, such as an inquiry into defendant's competency to stand trial."[36] Similarly, pre-*Blakely* cases have held that restitution and criminal forfeiture proceedings do not trigger the right to a jury trial.[37] But with the appearance of *Blakely*, matters such as forfeiture and restitution which had once seemed relatively straight-forward, suddenly became much more complicated. As professors Nancy J. King and Susan R. Klein pointed out recently in the *Federal Sentencing Reporter*:

> ... *Blakely* has thrown into doubt those decisions authorizing judges to make findings necessary for forfeiture and restitution awards. These cases have reasoned that *Apprendi* does not apply to fact finding in determining what assets, if any, can be forfeited because the forfeiture and restitution statutes do not create a penalty ceiling. This argument has rested in turn on the assumption that the statutory maximum under which a judge was free to sentence based on specific findings of fact was the maximum sentence codified into the U.S.Code, an assumption that we believe *Blakely* has now undercut. Instead, because judges may not order forfeiture of defendant's assets without specific factual findings that are not always part of the underlying conviction, these facts must be determined by a jury beyond a

---

28.  *Id.* at 2539 (quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 88, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)).

29.  *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

30.  *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984).

31.  *Whelchel v. McDonald*, 340 U.S. 122, 71 S.Ct. 146, 95 L.Ed. 141 (1950); *see also Ex parte Quirin*, 317 U.S. 1, 63 S.Ct. 1, 87 L.Ed. 3 (1942); *Kahn v. Anderson*, 255 U.S. 1, 41 S.Ct. 224, 65 L.Ed. 469 (1921).

32.  *Bean v. Calderon*, 166 F.R.D. 452 (E.D.Cal. 1996).

33.  *People v. Marshall*, 82 Mich.App. 92, 266 N.W.2d 678 (1978).

34.  *Delgado v. Souders*, 334 Or. 122, 46 P.3d 729 (2002).

35.  *Lynch v. Baxley*, 386 F.Supp. 378 (M.D.Ala.1974).

36.  Wayne R. LaFave et al., Criminal Procedure (West Supp.2004) § 22.1(c) at 86 (citing *People v. Lawley*, 27 Cal.4th 102, 115 Cal.Rptr.2d 614, 38 P.3d 461 (2002)).

37.  *See People v. Baumann*, 176 Cal.App.3d 67, 222 Cal.Rptr. 32 (1985) (no right to jury trial in restitution matters); *Libretti v. United States*, 516 U.S. 29, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995) (no right to a jury trial for criminal forfeitability).

reasonable doubt. Restitution ordered as part of sentencing is open to the same sort of attack.[38]

While the distinguished professors' arguments are plausible, the court disagrees with their suggestion that *Blakely* requires a jury trial on restitution. The key issue after *Blakely* appears to be whether "punishment" is involved. If so, the defendant will be entitled to a jury trial; if not, the judge can decide. Thus, *Blakely* explains that "every defendant has the right to insist that the prosecutor prove to the jury all facts legally essential *to the punishment.*"[39] In the context of this case, then, the question devolves to whether restitution is a punishment. A few days after *Blakely*, this court considered this very issue. In *United States v. Croxford,*[40] this court considered a defendant's *Blakely* challenge to judicial fact-finding with regard to both his Guidelines sentence and his restitution obligation. With respect to the prison sentence, this court concluded *Blakely* did not permit judicial fact-finding. As a result, the Federal Sentencing Guidelines were unconstitutional under *Blakely*, because they were substantively indistinguishable from the invalid Washington guidelines. With respect to restitution, however, this court concluded that *Blakely* was inapplicable. This court reasoned that "[t]he Sixth Amendment does not extend to restitution issues for the simple reason that restitution is not a penalty for a crime."[41]

In spite of this court's *Croxford* ruling, defendant Visinaiz has raised anew the issue of whether judicial fact-finding for an order of restitution violates the Sixth Amendment right to a jury trial. In support of his position, Visinaiz cites the Tenth Circuit's more recent decision in *United States v. Wooten.*[42] *Wooten* involved a challenge to an order of restitution for damage to the victim's car. The defendant argued that *Blakely* required that the order be set aside because it rested on judicial fact-finding rather than jury fact-finding. *Wooten* rejected that challenge. But it began its analysis by seemingly staking out the position, contrary to this court's analysis in *Croxford*, that restitution is a punishment. Citing cases from the Eighth and Ninth Circuits, *Wooten* stated: "[i]t is true that courts commonly regard such restitution orders as criminal penalties."[43] *Wooten* nonetheless rejected the defendant's *Blakely* challenge because "the amount of the restitution award does not exceed any prescribed statutory maximum."[44] The Tenth Circuit made this same ruling again recently in the unpublished opinion of *United States v. Lewis,*[45] and other courts, too, have held that *Blakely* does not apply to restitution awards because they do not exceed a statutory maximum.[46]

---

**38.** Nancy J. King & Susan R. Klein, *Beyond Blakely*, 16 Fed.Sent.R. 316, 2004 WL 2235851 (June 2004).

**39.** —— U.S. at——, 124 S.Ct. at 2543 (emphasis deleted and added).

**40.** 324 F.Supp.2d 1230 (D.Utah July 7, 2004)

**41.** *Id.* at 1250.

**42.** 377 F.3d 1134 (10th Cir.2004) (pet'n for cert. pending).

**43.** *Id.* at 1144 (citing *United States v. Cliatt,* 338 F.3d 1089, 1094 (9th Cir.2003)); *United*

*States v. Ross,* 279 F.3d 600, 609 (8th Cir. 2002).

**44.** *Id.* at 1144 n. 1.

**45.** 2004 WL 2409361 (10th Cir. Oct.26, 2004).

**46.** *See United States v. Aihe,* 2004 WL 2434713 (D.Minn.2004) (holding that restitution did not exceed any statutory maximum, citing *Wooten*); *State v. White,* 2004 WL 2326708 (Tenn.Crim.App.2004) (rejecting *Blakely* challenge to restitution award because Tennessee restitution statute does not set a maximum for awards); *see also United States v. Stafford,* 2004 WL 1629540 (W.D.Wis. July 19, 2004) (finding that defen-

### C. Restitution Is Not a Criminal Penalty Covered by *Blakely*

#### 1. Tenth Circuit Precedent Holds that Restitution Is Not A Penalty

In light of the Tenth Circuit's command in *Wooten*, it might seem that this court should withdraw its earlier conclusion that restitution is not a penalty. Ordinarily, of course, this court would quickly follow any directive from the superior court. In this case, however, there is a complicating factor: the Tenth Circuit had previously held exactly the opposite—that restitution was *not* a criminal penalty. As this court reasoned in *Croxford*, in 1999, the Tenth Circuit squarely held in *United States v. Nichols*[47] that restitution orders under the MVRA are not subject to the Constitution's prohibition of ex post facto laws because restitution is not "punitive" in nature.[48] *Nichols* explained the basis for this conclusion in some detail. Quoting earlier circuit precedent in *United States v. Arutunoff*,[49] *Nichols* explained that the purpose of restitution statutes " 'is not to punish defendants or to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses.' "[50] *Nichols* also quoted from another Tenth Circuit decision—*United States v. Hampshire*[51]—which had stated that:

> The Constitution's explicit prohibition against ex post facto laws applies only to those laws that inflict criminal punishment. Mr. Hampshire's restitution order · does not implicate the Ex Post Facto Clause because it does not inflict punishment upon him but rather seeks to compensate his child for his failure to pay his past due support obligation.[52]

*Nichols* then concluded: "We think the law in this circuit has been established in *Hampshire* and *Arutunoff*, and we are obliged to follow it. Therefore, we believe the district court erred in viewing restitution as a punitive act...."[53] In reaching this conclusion, *Nichols* noted that it was joining the Seventh Circuit and parting company with the Second, Third, Eighth, Ninth, Eleventh, and D.C. Circuits.[54]

In light of these seemingly conflicting pronouncements—from *Wooten* that restitution is "commonly regarded" as a "criminal penalty" and contrastingly from *Nichols, Hampshire*, and *Arutunoff* that it is not—the court must decide whether there is truly a conflict. One possible way of reconciling these statements might be to note that *Wooten* dealt with the question of whether restitution is a penalty subject to the protections of the Sixth Amendment while *Nichols, Hampshire*, and *Arutunoff* dealt with the question of whether restitution is subject to the prohibition of ex post facto legislation. But this would be a distinction without a difference. The Supreme Court's analysis of whether a statutory remedy is viewed as "punitive" has used case law from both Sixth Amendment

---

dant could not raise *Blakely* challenge to a restitution order on collateral attack).

**47.** 169 F.3d 1255 (10th Cir.1999).

**48.** *Id.* at 1279–1280.

**49.** 1 F.3d 1112, 1121 (10th Cir.1993), *cert. denied*, 510 U.S. 1017, 114 S.Ct. 616, 126 L.Ed.2d 580 (1993).

**50.** *Nichols*, 169 F.3d 1255, 1279 (10th Cir.1999)(quoting *Arutunoff*, 1F.3d at 1121).

**51.** 95 F.3d 999 (10th Cir.1996), *cert. denied*, 519 U.S. 1084, 117 S.Ct. 753, 136 L.Ed.2d 690 (1997).

**52.** *Nichols*, 169 F.3d at 1279 (quoting *Hampshire*, 95 F.3d at 1006).

**53.** *Id.* at 1279–80.

**54.** *Id.* at 1280 n. 9.

and ex post facto jurisprudence interchangeably without finding any significant difference. For example, in *Smith v. Doe,*[55] the Supreme Court explained that the seven factors used to determine whether a statute is civil or criminal in intent for purposes of an *ex post facto* determination, "migrated into our *ex post facto* case law from double jeopardy jurisprudence"[56] and "have their earlier origins in cases under the *Sixth* and Eighth Amendments, as well as the Bill of Attainder and the *Ex Post Facto* Clauses."[57] The Supreme Court's view of these factors as " 'neither exhaustive nor dispositive' "[58] in determining whether the effects of a particular piece of legislation are "civil" or "criminal" stems, in meaningful part, from the Court's recognition that these factors are, in fact, "designed to apply in various constitutional contexts."[59] In light of this, there appears to be no basis in the case law for distinguishing between what is a penalty for Sixth Amendment purposes as opposed to ex post facto purposes. This means that the suggestion in *Wooten* that restitution is a criminal penalty for purposes of the Sixth Amendment is substantively at odds with the holdings in *Nichols, Hampshire,* and *Arutunoff,* that restitution is not a criminal penalty for purposes of the ex post facto prohibition.

In light of this conflict, the court must decide which circuit authority to follow.

The court declines to follow the suggestion in *Wooten* for two reasons. First, *Wooten's* suggestion that restitution is "commonly regarded" as a criminal penalty was dicta. *Wooten* went on to explain that "[t]he issue here, however, is *not* whether the restitution order was a criminal penalty for purposes of *Apprendi.* Even if the court *were to* conclude that it is a criminal penalty, Mr. Wooten does not contend that the restitution order exceeds the value of the damaged property, and it is for that reason that *Apprendi* does not apply here."[60] Because *Wooten* never actually held restitution was a criminal penalty, its analysis is not binding. Second and more important, it is clear that *Wooten* could not have overruled earlier Circuit precedent. It is settled law that a three-judge panel is "bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court."[61] Moreover, in the case of an intra-circuit conflict, the court is obligated to "follow earlier, settled precedent over a subsequent deviation therefrom."[62] In light of the precedence given to an earlier panel holding, *Wooten* simply could not have altered the law of the Circuit. Instead, the law of the Circuit, as stated in *Nichols,* is that restitution "does not inflict punishment upon [a defendant] but rather seeks to compensate" a victim for the losses caused by a crime.[63]

**55.** 538 U.S. 84, 97, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

**56.** *Smith v. Doe,* 538 U.S. at 97, 123 S.Ct. 1140.

**57.** *Id.* (citing *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–169, and nn. 22–28, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)) (emphasis added).

**58.** *Id.* (quoting *United States v. Ward,* 448 U.S. 242, 249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)).

**59.** *Id.*

**60.** 377 F.3d at 1145 (emphasis added).

**61.** *Burlington Northern and Santa Fe Railway Company v. Burton,* 270 F.3d 942, 944 (10th Cir.2001) (quoting *United States v. Morris,* 247 F.3d 1080, 1085 (10th Cir.2001)), *cert. denied,* 536 U.S. 959, 122 S.Ct. 2664, 153 L.Ed.2d 838 (2002).

**62.** *United States v. Prentiss,* 206 F.3d 960, 965 n. 2 (10th Cir.2000) (quoting *Clymore v. United States,* 164 F.3d 569, 573 (10th Cir.1999)).

**63.** 169 F.3d at 1279 (internal quotation omitted).

## 2. Restitution Is Not Punitive But Rather Compensatory

Because of the tension in the Tenth Circuit's case law about the non-punitive nature of restitution and because of the views to the contrary in several other circuits, it may be appropriate for this court to explain more fully the reasons underlying its conclusion that restitution is not punitive. Restitution is primarily designed to compensate, not punish. *Nichols*, for example, notes that the purpose of restitution "is not to punish defendants or to provide a windfall for crime victims, but rather to ensure that victims, to the greatest extent possible, are made whole for their losses." [64] Similarly, in the instructive case of *United States v. Newman*,[65] the Seventh Circuit stressed that "[r]estitution has traditionally been viewed as an equitable device for restoring victims to the position they had occupied prior to a wrongdoer's actions." [66] Even the Supreme Court has noted that the ordinary meaning of restitution is to "restor[e] someone to a position he occupied before a particular event." [67]

The notion of compensating victims for losses attributable to the defendant's crime is logically and intuitively non-punitive. For example, if a burglar is caught running out of a house with the homeowner's television, we would not say he was "punished" if the police officer took the television and gave it back to its owner. If a bank robber is caught on the bank's front steps, we would not say it is a "penalty" to give the loot bag back to the tellers. Requiring return of the property instead works to prevent a criminal from receiving a windfall by forcing him to disgorge an unjustly obtained benefit. Variations on these fact patterns are simply matters of degree. Thus, even if the burglar or the bank robber have escaped with their stolen property and have even converted it in some way, the return of equivalent value to the homeowner or the bank is better described as compensation to the victim rather than punishment of the criminal. Moving away from stolen property examples to other, more intangible contexts (such as rape or murder), so long as restitution is pegged to easily-ascertainable monetary losses such as medical expenses or future lost income, it still makes little sense to characterize restitution as "punishment." Restitution is, instead, a device ultimately aimed at restoring the victim back into the position he occupied prior to his victimization. And regardless of the context, as the Seventh Circuit noted in *Newman*, while "[t]he criminal law may impose punishments on behalf of all of society, . . . equitable payments of restitution in this context inure only to the specific victims of a defendant's criminal conduct and do not possess a similarly punitive character." [68]

*Newman* bolstered its conclusion that restitution under the MVRA is not punitive by applying the analytical framework set forth by the Supreme Court in *Hudson v. United States*.[69] First, under this framework, the Seventh Circuit looked to " 'whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or another.' " [70] Finding no legislative

---

64. 169 F.3d at 1279 (quoting *United States v. Arutunoff*, 1 F.3d at 1121).

65. 144 F.3d 531 (7th Cir.1998).

66. *Id.* at 538.

67. *Hughey v. United States*, 495 U.S. 411, 416, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990).

68. 144 F.3d at 538.

69. 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997).

70. *Newman*, 144 F.3d at 540 (quoting *Hudson*, 118 S.Ct. at 493 (internal quotation omitted)).

preference in the MVRA, the Seventh Circuit then delved deeper to ascertain if "the statutory scheme was so punitive either in purpose or effect . . . as to tranfor[m] what was clearly intended as a civil remedy into a criminal penalty."[71] Several factors are relevant to this inquiry:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of *scienter*; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.[72]

A careful weighing of these factors, including the relevant history of criminal restitution, led the Seventh Circuit to conclude that restitution was not a punitive sanction for purposes of ex post facto analysis.[73]

The Seventh Circuit has reaffirmed its *Newman* holding several times, while acknowledging that its view of restitution under the MVRA as "civil" instead of "penal" is the minority position. In *United States v. Bach,* for instance, Judge Posner staunchly defended the Circuit's position: "[o]urs is a minority view . . . but we think it is correct."[74] The *Bach* panel then fortified the Circuit's analysis by focusing on historical considerations—specifically, the traditional overlap between crime and tort:

[i]n particular, most crimes that cause definite losses to ascertainable victims are also torts: the crime of theft is the tort of conversion; the crime of assault is the tort of battery—and the crime of fraud is the tort of fraud. Functionally, the Mandatory Victims Restitution Act is a tort statute, though one that casts back to a much earlier era of Anglo-American law, when criminal and tort proceedings were not clearly distinguished.[75]

In further underscoring the Act's functionally "civil" character, the court pointed out that:

> [t]he Act enables the tort victim to recover his damages in a summary proceeding ancillary to a criminal prosecution. . . . We do not see why this procedural innovation, a welcome streamlining of the cumbersome processes of our law, should trigger rights under the ex post facto clause. It is a detail from a defrauder's standpoint whether he is ordered to make good his victim's losses in a tort suit or in the sentencing phase of a criminal prosecution.[76]

As the Seventh Circuit notes in *Bach,* historically, criminal law and tort law substantially overlapped. Many crimes were also torts, and victims pursued private remedies for damages against criminal perpetrators in the civil system.[77] That neither area has ever been wholly free from the other is evident, on the one hand, in the development of punitive damages in

---

**71.** *Id.*

**72.** *Id.* (quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)).

**73.** *Id.* at 542.

**74.** 172 F.3d 520, 523 (7th Cir.1999), *cert. denied,* 528 U.S. 950, 120 S.Ct. 372, 145 L.Ed.2d 290 (1999).

**75.** *Id.*

**76.** *Id.*

**77.** *See* Peggy M. Tobolowsky, *Crime Victim Restitution: Its Past, Present and Future,* 36 CRIM.L.BULL. 85 (2000).

tort law, a main purpose of which is to punish and deter a wrongdoer.[78] And, on the other hand, on the criminal law side, "restitution continued to be available on a limited basis in the Anglo–American criminal system."[79] For all these reasons, restitution should not be regarded as a punishment for a crime.

The Supreme Court's decision in *Kelly v. Robinson*[80] can be read consistently with this analysis. In *Kelly*, the Court stated that a restitution obligation, imposed as a condition of probation in a Connecticut criminal case, was not dischargeable under the Bankruptcy Code because (among other things) criminal proceedings involve the state's interest in rehabilitation and punishment rather than the victim's desire for compensation. But *Kelly* was speaking generally about the aims of the criminal justice system, not directly holding that restitution is primarily punishment. More important, *Kelly's* specific holding was that the bankruptcy statute blocking discharge of debts "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss"[81] covered restitution awards. The holding merely construed a statute, motivated in large measure by "the deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings."[82] *Kelly* conceded that restitution did "resemble a judgment 'for the benefit of the victim,'"[83] while concluding that it was primarily a judgment serving the rehabilitative and penal goals of the state. One of the reasons *Kelly* gave for this conclusion—that "the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant"[84]—plainly does not apply to the MVRA. The MVRA mandates full restitution for the amount of the victim's actual losses without regard to defendant's financial or other circumstances.[85] Thus, in contrast to the Connecticut restitution statute which "provides for a flexible remedy tailored to the defendant's situation,"[86] the MVRA guarantees victims' full restitution "without consideration of the economic circumstances of the defendant."[87] This command that victims receive restitution is reaffirmed by the new victims' rights statute guaranteeing victims in the federal system "[t]he right to full and timely restitution...."[88] For all these reasons, *Kelly* should not be read outside of its narrow bankruptcy context to create a general understanding that restitution under federal law is a "punishment."

---

78. *See BMW, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); Thomas B. Colby, *Beyond the Multiple Punishment Problem: Punitive Damages as a Punishment for Individual Private Wrongs,* 87 Minn. L.Rev. 583 (2003).

79. *Note, Victim Restitution in the Criminal Process: A Procedural Analysis,* 97 Harv. L.Rev 931, 934 (1984) (citing Martin, "Restitution and Community Service Sentences: Promising Sentencing Alternative or Passing Fad?" in New Directions in the Rehabilitation of Criminal Offenders 470, 473 (S. Martin, L. Sechrest & R. Redner eds.1981)).

80. 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).

81. 11 U.S.C. § 523(a)(7).

82. *Kelly,* 479 U.S. at 47, 107 S.Ct. 353.

83. *Id.* at 52, 107 S.Ct. 353.

84. *Id.* at 51, 107 S.Ct. 353.

85. *See generally United States v. Bedonie,* 317 F.Supp.2d at 1299 & n. 41 (D.Utah 2004) (discussing *United States v. Johnson,* 183 F.3d 1175, 1179 (10th Cir.1999)).

86. *Kelly,* 479 U.S. at 53, 107 S.Ct. 353.

87. 18 U.S.C. § 3664(f)(1)(A).

88. 18 U.S.C. § 3771(a)(6).

In sum, because restitution is not a "punishment" for a crime, the Sixth Amendment right to a jury trial, as explicated in *Apprendi* and *Blakely*, does not extend to determining restitution awards.

## III. History Provides No Support for Extending a Jury Trial Right to Restitution Awards

A separate reason requires the conclusion that *Blakely* does not extend a jury trial right to restitution: historically judges imposed restitution. *Blakely* extended the jury trial right to sentencing based on the Framers' original understanding of the Sixth Amendment's scope. Because that understanding did not embrace restitution orders, *Blakely* does not require a jury trial on restitution.

*Blakely* plainly rests on its understanding of original meaning. Justice Scalia's concluding paragraph in the Court's opinion ties directly into the Framer's intention and quotes from *Blackstone's Commentaries:*

> The Framers would not have thought it too much to demand that, before depriving a man of three more years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to "the unanimous suffrage of twelve of his equals and neighbors" ... rather than a lone employee of the State.[89]

The soundness of *Blakely's* history has been questioned by some commentators.[90]

But the important point here is that the historical practice regarding jury determination of prison sentences is not necessarily the same as the practice regarding restitution. *Blakely* did not investigate restitution, as that issue was not before the Court. So far as this court can determine, just as "the Framers would not have thought it too much" to require a jury trial before imposition of a prison sentence, so too would they have been surprised by the argument that a jury trial was required before imposition of restitution.

At common law, for example, restitution was a statutory remedy "to be awarded *by the justices* on a conviction of robbery or larceny."[91] This common law rule was recognized by the Supreme Court in 1842 in *United States v. Murphy:*

> The statute of 21 Hen. VIII., c. 2, gave full restitution of the property taken, after the conviction of an offender, of robbery. The writ of restitution was to be granted by the justices of the assize....[92]

This common law practice was retained in several state statutes in the early years of the Republic.[93] Typical in this regard is this Pennsylvania petit larceny statute:

> ... if any person or persons shall hereafter feloniously steal, take and carry away any goods, or chattels under the value of twenty shillings ... being thereof legally convicted, shall be deemed guilty of petty larceny, and shall

**89.** *Blakely,* —— U.S. at ——, 124 S.Ct. at 2543 (quoting 4 W. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 343 (1769)).

**90.** *See, e.g.,* Rory K. Little and Teresa Chen, *The Lost History of* Apprendi *and the* Blakely *Petition for Rehearing,* 17 FED. SENT. RPTR. 69 (forthcoming Oct. 2004).

**91.** 16 C.J.S. *Criminal Law* § 3255 (1918) (citing 21 Hen. VIII c 11; 7 & 8 Geo. IV c 29 § 57) (emphasis added).

**92.** 41 U.S. 203, 206, 16 Pet. 203, 10 L.Ed. 937 (1842).

**93.** *See* Act of September 15, 1786 (12 St.L. 282–283 Ch. 1241 (Penn.)); *Ross v. Bruce,* 1 Day 100, 1803 WL 142 (Conn.1803) (citing state statute 413 authorizing "treble damages" for theft); *Commonwealth v. Andrews,* 2 Mass. 14, 24, 1806 WL 735, *7 (Mass.1806) (citing larceny act of March 15, 1785, authorizing award of treble the value of goods stolen to the owner upon conviction).

restore the goods and chattels so stolen or pay the full value thereof to the owner or owners thereof. . . . [94]

Forcible entry and detainer is one crime in which it was common to encounter provision of a restitutionary remedy at common law. Upon conviction by a jury of forcible entry and detainer, for example, *Blackstone's Commentaries* explains that "besides the fine on the offender, the justices shall make restitution by the sheriff of the possession. . . ." [95] Many states early on criminalized forcible entry upon and detainer of land, and often these statutes authorized the judge to order restitution and the payment of damages upon conviction.[96]

That restitution ordered by judges was routinely available at common law and in the early American courts as a remedy for the crimes of larceny and forcible entry and detainer supports the conclusion that restitution has historically been understood as a "civil" and not a "punitive" remedy. Judge-ordered restitution as part of the sentence for these crimes did not appear to be controversial around the time of the country's founding. One reason for this may be that very rarely, either in the larceny or forcible entry and detainer context, would the judge be called upon to find any additional facts in order to calculate restitution. An indictment for larceny would generally contain as an element the value of the stolen property, if only to establish the degree (petit or

grand) of the crime. Similarly, the writ of restitution issued upon a forcible entry conviction generally directed only return of possession of the property to the victim, so no further fact-finding was required. In fact, at least one appellate decision reversed an award of "damages" even though it was expressly authorized under the state's forcible entry and detainer statute,[97] citing concerns about unfettered judicial discretion and the need for victims to pursue remedies in civil court. This same decision did make clear, however, that "damages" as specified in the statute still contemplated an award of costs to the victim.[98] That facts relevant to a costs determination might be disputed did not appear to concern the courts, and judges apparently continued to make these awards unchallenged. And even if most larceny sentences did not require judges to find additional facts to calculate restitution, the evidence does not establish that this was universally so and it seems probable that judges would sometimes have been required to set a specific valuation for restitutionary purposes when an indictment only specified (or the jury only found) value as "less than 200 shillings" for purposes of establishing the degree of the crime. To the extent that this kind of additional judicial fact-finding likely occurred in some larceny cases, it supports the conclusion that the Framers would have understood the "criminal prosecution" to which the Sixth Amendment right

94. Act of September 15, 1786 (12 St. L., 282–183 Ch. 1241, sec. IV (Penn.)).

95. 4 BLACKSTONE COMM. p. 117 (2001 Mod. Engl. ed. of the 9th ed. of 1793).

96. *See Allen v. Ormsby*, 1 Tyl. 345, 1802 WL 737 (Vt.1802) (citing sec. 5 of the forcible entry and detainer act of February 27, 1797); *Crane v. Dod*, 2 N.J.L. 340, 1808 WL 928 (N.J.1808) (citing sec. 13 of the state's forcible entry and detainer act providing for an award of "treble costs"); *People ex rel. Corless v.*

*Anthony*, 4 Johns. 198, 1809 WL 1178 (N.Y.Sup.1809) (citing St. 11th Sess. c. 6, forcible entry and detainer statute authorizing an award of restitution and damages to the aggrieved party). *But see Commonwealth v. Stoever*, 1 Serg. & Rawle 480, 1815 WL 1265 (Pa.1815) (no damages allowed under state's forcible entry and detainer statute).

97. *Fitch v. People ex rel. Platt*, 16 Johns. 141 (N.Y.Sup.1819).

98. *Id.*

to a jury trial extended as not implicating restitution.

■ One last argument remains to be considered. Even if these historical materials demonstrate that a jury trial was not required for a restitution award under the Sixth Amendment, could a jury trial nonetheless be required by the Seventh Amendment? After all, it might be argued, if restitution is not viewed as a penalty and therefore is not part of a criminal prosecution, it still might fall within the Seventh Amendment protections for jury trial in civil cases. But the Tenth Circuit has already rejected a Seventh Amendment challenge to the Victim Witness Protection Act ("VWPA"), the federal precursor to the MVRA. In *United States v. Watchman*, the Tenth Circuit held that court-ordered restitution under the VWPA "does not infringe on Seventh Amendment rights"[99] because it is a "constitutional extension of criminal sentencing."[100] The court sees no reason why *Watchman's* reasoning should not apply with equal force to the MVRA's restitution procedure. Thus, the court finds no Seventh Amendment problem with an award of restitution under the MVRA. In addition, the Supreme Court has noted that "[e]very Federal Court of Appeals that has considered the issue has concluded that criminal defendants contesting the assessment of restitution orders are not entitled to the protections of the Seventh Amendment."[101]

For all these reasons, there appears to be no justification in the historical matters for concluding that the Sixth Amendment (or Seventh Amendment) right to a jury

trial extends to restitution awards. This conclusion must be a preliminary one. The court has done its own historical research on this matter, unassisted by the parties. It is naturally possible that the court has overlooked contrary historical materials. Therefore, the court will allow any party who objects to the this analysis to submit a brief regarding the historical practices on judicial involvement in restitution by January 7, 2005. Any response is due by January 21, 2005. For this purpose and for the purpose of precisely calculating the victim's restitution in this case, the court sets the date for final determination of the victim's losses at February 11, 2005. The court is authorized by statute to hold open a sentencing for purposes of calculating restitution.[102] The court invokes that power here.

## IV. The Court Need Not Reach the Question of Whether Restitution Here Exceeds Any Statutory Maximum

In light of the court's holding that the Sixth Amendment does not extend to restitution, the court need not explore the complex question of how *Blakely's* holding about a "statutory maximum" applies in restitution contexts. *Blakely* held that the "statutory maximum" for a prison sentence is "the maximum [the judge] may impose *without* any additional findings"[103] beyond the jury's verdict. Applying that holding in restitution contexts could be difficult. In this case, for instance, the MVRA requires a restitution award to the victim "for income lost by such victim as a result of such offense."[104] Are additional find-

---

99.  749 F.2d 616, 617 (10th Cir.1984).

100.  *Id.*

101.  *Kelly v. Robinson,* 479 U.S. at 53 n. 14, 107 S.Ct. 353 (citing Note, *The Right to a Jury Trial to Determine Restitution Under the Victim and Witness Protection Act of 1982,* 62 TEXAS L.REV. 671 (1984)).

102.  18 U.S.C. § 3664(d)(5).

103.  —— U.S. ——, ——, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004).

104.  18 U.S.C. § 3663A(b)(2)(C).

ings beyond the mere fact of a homicide conviction required to support such an award? The Tenth Circuit's decision in *Wooten* noted that other circuits have held jury fact-finding is not required for restitution awards because the MVRA does not specify any statutory maximum.[105] Those circuit decisions, however, all pre-dated *Blakely's* expansive interpretation of what constitutes a statutory maximum.

*Wooten* itself rejected a *Blakely* challenge to a restitution award on the grounds that no statutory maximum was exceeded. But that holding rested on the fact that the defendant did "not contend that the restitution order exceeds the value of the damaged property."[106] *Wooten* thus does not speak to situations of contested fact-finding.

It is a difficult question whether *Blakely* changes our understanding of "statutory maximum" in a way that might require jury fact-finding in restitution contexts. For the reasons contained in the previous sections of this opinion, it is simpler to conclude that *Blakely* is simply inapplicable to restitution awards.

## CONCLUSION

For all of the foregoing reasons, the court reaches the following holdings: In homicide cases, an award of restitution for lost income is required by the MVRA. The fact-finding for imposing a restitution award need not be done by a jury. *Blakely's* extension of the Sixth Amendment right to a jury trial to sentencing proceedings only extends to parts of the sentencing imposing "punishment." Because restitution is not a punishment, no right to a jury trial exists. In addition, *Blakely* rests on an understanding of the Framer's

intentions. The Framers did not envision juries determining restitution awards.

In light of these holdings, the court will proceed to make the necessary factual determinations to support a restitution award in this case on its own at the upcoming sentencing hearing. Defendant's objections to an award of restitution in this case are therefore DENIED.

---

**105.** *See Wooten*, 377 F.3d at 1144 (citing *United States v. Ross*, 279 F.3d 600, 609–10 (8th Cir.2002); *United States v. Bearden*, 274 F.3d 1031, 1042 (6th Cir.2001)).

**106.** *Id.* at 1145.