**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 10 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHARLES WOOTEN,

Defendant-Appellant.

No. 03-6185

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA
## (D. Ct. No. CR-02-115-A)

---

Joshua A. Norris, Special Assistant United States Attorney (Robert G. McCampbell, United States Attorney, and Mark A. Yancey, Assistant United States Attorney, with him on the briefs), Office of the United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Joseph L. Wells, Oklahoma City, Oklahoma, for Defendant-Appellant.

---

Before **TACHA** , Chief Circuit Judge, **BRISCOE** , Circuit Judge, and **LUNGSTRUM** , Chief District Judge. *

---

**LUNGSTRUM** , Chief District Judge.

---

\* The Honorable John W. Lungstrum, Chief United States District Judge for the District of Kansas, sitting by designation.

Defendant-Appellant Charles Wooten was convicted of assault and kidnapping. He was sentenced to eighty-four months imprisonment and the court ordered restitution in the amount of $17,751.58. He now appeals his conviction, sentence, and restitution order. Exercising jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we AFFIRM the judgment of the district court. We DISMISS for lack of jurisdiction the aspect of Mr. Wooten's appeal in which he contends the district court erred by refusing to grant him a downward departure.

## I. Background

The evidence at trial revealed that shortly before midnight on June 6, 2002, LaToya Portee and Elizabeth Wooten, both of whom were active duty soldiers in the United States Army, were leaving a night club on the Fort Sill, Oklahoma, military installation. As they attempted to exit the parking lot in Ms. Portee's 2001 Ford Taurus, Mr. Wooten, Ms. Wooten's ex-husband, blocked their way with a truck. Ms. Portee was eventually able to maneuver her car around Mr. Wooten's truck and exit the parking lot. Mr. Wooten followed them. Ms. Portee and Ms. Wooten headed toward the military police station and called 911. The two vehicles were traveling through the Army base at approximately sixty miles per hour in twenty-five to thirty mile-per-hour speed zones. Mr. Wooten rammed

the truck he was driving into the back of Ms. Portee's car three times. The last time, he caused her car to spin out of control, hit a telephone pole, and ultimately come to rest underneath a nearby fence. The car was totaled. Mr. Wooten then grabbed Ms. Wooten, forced her into his truck, and drove her to the house where he was staying at the time, which was a few miles away in Lawton, Oklahoma. He told Ms. Wooten that he had a gun and he threatened to kill her. After they arrived at the house, Ms. Wooten escaped and went to a nearby house where she called 911.

A grand jury returned a two-count indictment charging Mr. Wooten with intentionally assaulting Ms. Portee and Ms. Wooten with a dangerous weapon (*i.e.*, a motor vehicle) in violation of 18 U.S.C. § 113(a)(3), and kidnapping Ms. Wooten in violation of 18 U.S.C. § 1201(a)(2). A jury found him guilty on both counts. He was sentenced to eighty-four months imprisonment and the court ordered restitution in the amount of $17,751.58. On appeal, Mr. Wooten raises five arguments relating to: (1) the Posse Comitatus Act of 1878, 18 U.S.C. § 1385 (the "PCA") ; (2) evidentiary rulings regarding another incident that occurred on May 3, 2002; (3) the restitution order; (4) decrease in offense level for acceptance of responsibility; and (5) downward departure.

## II. Discussion

For the reasons explained below, the court finds each of Mr. Wooten's arguments to be without merit. Briefly summarized, the court finds that even if Captain Norris's appointment as a Special Assistant United States Attorney ("SAUSA") violated the PCA, Mr. Wooten would be entitled to no relief. Further, the district court did not abuse its discretion in the manner in which it handled the evidence regarding Captain Norris's decision not to prosecute Mr. Wooten for the May 3 incident. Insofar as the restitution order is concerned, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), does not apply because the order did not exceed any prescribed statutory maximum. With respect to Mr. Wooten's arguments regarding sentencing, the district court did not err by declining to decrease Mr. Wooten's offense level for acceptance of responsibility, and this court is without jurisdiction to consider his argument that the district court erred by refusing to grant him a downward departure.

### A. Posse Comitatus Act

Mr. Wooten's primary argument on appeal is that the district court erred by denying his motion to dismiss based on the Posse Comitatus Act. Joshua A. Norris, who is a United States Army Captain with the Staff Judge Advocate Corps at Fort Sill was active in the prosecution of this case as an SAUSA. Captain Norris filed the complaint, obtained the indictment, and entered his appearance on

July 2, 2002. On July 23, 2002, Mark A. Yancey, a full-time Assistant United States Attorney, entered his appearance. Together, Captain Norris and Mr. Yancey prosecuted the case and obtained the conviction against Mr. Wooten. After trial, Mr. Wooten filed a motion to dismiss the criminal case against him on the grounds that Captain Norris's participation in the prosecution of this case violated the PCA because a full-time military officer was used to prosecute a civilian in federal district court. The district court denied the motion to dismiss and Mr. Wooten now appeals that order. Generally, the court reviews the grant or denial of a motion to dismiss for an abuse of discretion. *United States v. Giles*, 213 F.3d 1247, 1248 (10th Cir. 2000); *United States v. Wood*, 6 F.3d 692, 694 (10th Cir. 1993). When, however, the dismissal involves issues of statutory interpretation, as is the case here, the court reviews the district court's decision de novo. *Giles*, 213 F.3d at 1248-49; *Wood*, 6 F.3d at 694.

The Posse Comitatus Act was enacted toward the end of the Reconstruction era after the Civil War "for the purpose of limiting the direct active use of federal troops by civil law enforcement officers to enforce the laws of this nation." *United States v. Hutchings*, 127 F.3d 1255, 1257 (10th Cir. 1997) (internal quotation omitted); *see generally* Mark David "Max" Maxwell, *The Enduring Vitality of the Posse Comitatus Act of 1878*, 37 Prosecutor 34, 34 (2003) (discussing the historical origins of the PCA). The PCA provides:

Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. § 1385. It was intended "'to prevent the use of the federal army to aid civil authorities in the enforcement of civilian laws.'" *Nelson v. Geringer*, 295 F.3d 1082, 1092 n.11 (10th Cir. 2002) (quoting *Gilbert v. United States*, 165 F.3d 470, 472 (6th Cir. 1999)).

There appears to be no dispute in this case that the United States Attorney for the Western District of Oklahoma "willfully use[d]" Captain Joshua Norris, an active duty member of the Army and Staff Judge Advocate, to assist in "execut[ing] the laws" of the United States. In particular, Captain Norris was appointed as an SAUSA and, in that role, participated in the investigation, grand jury proceedings, and trial of this case. The question is whether Captain Norris's appointment and participation fall within the scope of the PCA's express exception. *See* § 1385 ("except in cases and under circumstances expressly authorized by the Constitution or Act of Congress"). In other words, were Captain Norris's appointment and participation "expressly authorized" by the Constitution or a federal statute?

The Court declines to answer this question, in part because it concludes that it does not have to do so in order to resolve this appeal and in part because the

- 6 -

factual record presented to us does not address how or whether Captain Norris was assigned or detailed to be an SAUSA. Assuming that Captain Norris's appointment and participation in this case violated the PCA, the question then becomes to what relief, if any, Mr. Wooten would be entitled. The answer is "none."

Mr. Wooten has not asserted, nor can he establish that any deficiencies in Captain Norris's appointment deprived the district court of jurisdiction over his case. A "court's power to regulate the attorneys who appear before it does not affect the court's jurisdiction over the underlying prosecution." *United States v. Fitzhugh*, 78 F.3d 1326, 1330 (8th Cir. 1996). "Thus, defects of th[e] kind [asserted here] have consistently been treated as non-jurisdictional." *Id.*; *see also United States v. Cotten*, 471 F.2d 744, 749 (9th Cir. 1973) (rejecting the defendants' assertion that alleged violations of the PCA warranted either dismissal of the criminal charges or a finding that the trial court lacked jurisdiction).

Nor can Mr. Wooten establish that he was entitled to dismissal of the indictment against him on non-jurisdictional grounds. As an initial matter, it appears that Mr. Wooten's failure to raise the PCA issue until after trial deprives him of that remedy altogether. *See* Fed. R. Crim P. 12(b)(3) (providing that motions alleging defects in instituting the prosecution and/or in the indictment

"must be raised before trial"). Even absent waiver, he is not entitled to such a remedy. It is true that Federal Rule of Criminal Procedure 6(d)(1) narrowly limits who "may be present while the grand jury is in session," and thus would have been violated by Captain Norris's presence before the grand jury if he had not been properly appointed as an SAUSA. The Supreme Court, however, has adopted the harmless error standard of Federal Rule of Criminal Procedure 52(a) for violations of Rule 6(d), *see United States v. Mechanik*, 475 U.S. 66, 71-72 (1986), and there has been no assertion by Mr. Wooten on appeal that he was prejudiced by Captain Norris's presence before the grand jury. *See generally United States v. Fowlie*, 24 F.3d 1059, 1066 (9th Cir. 1994) (concluding the district court did not abuse its discretion by declining to dismiss the indictment based upon the unauthorized participation of an SAUSA in grand jury proceedings); *United States v. Mendoza-Cecelia*, 963 F.2d 1467, 1477 n.9 (11th Cir. 1992) (holding the PCA "provides no basis for the proposed remedy of dismissal of all charges"), *abrogated on other grounds by Coleman v. Singletary*, 30 F.3d 1420 (11th Cir. 1994); *United States v. Yunis*, 924 F.2d 1086, 1093-94 (D.C. Cir. 1991) (suggesting "dismissal of all charges against [defendant] might well be an inappropriate remedy if violations of the Posse Comitatus Act were found"). Indeed, Mr. Wooten's conviction by a trial jury effectively demonstrates there was probable cause to charge him with the offenses for which he was

convicted. *See United States v. Flores-Rivera*, 56 F.3d 319, 328 (1st Cir. 1995) (concluding the defendant's conviction by a petit jury cured any alleged error before the grand jury).

Finally, Mr. Wooten has not alleged, let alone explained, how the alleged deficiency in the appointment of Captain Norris adversely impacted the trial jury's verdict. Although using Captain Norris as an SAUSA in this case created a significant legal issue for Mr. Wooten, on the record presented there is no basis for reversing his convictions and remanding for a new trial.

## B. Evidence Concerning Decision Not to Prosecute a Prior Incident

Mr. Wooten contends the district court erred in the manner in which it handled certain evidence. The district court allowed evidence regarding Mr. Wooten's history of violence toward Ms. Wooten to be admitted under Fed. R. Evid. 404(b). Part of that evidence pertained to an incident that occurred on May 3, 2002, just a few weeks before Mr. Wooten committed the offenses for which he was convicted. Ms. Wooten had reported to military police that when she took her children to day care to drop them off on May 3, Mr. Wooten appeared at the day care center and threatened her with a knife. Captain Norris was the individual who made the decision not to prosecute Mr. Wooten for the May 3 incident, and at trial Mr. Wooten wanted to call Captain Norris to testify regarding that decision. Captain Norris represented to the court that he had no

personal knowledge of the incident on May 3, and that his decision not to prosecute was based on statements by officers and a "cursory review of what's contained in the discovery documents." (Tr. at 569-70.) He stated: "I never spoke with the defendant, I never spoke with Elizabeth Wooten, I never spoke with any of the witnesses involved in that case." ( *Id.* at 570.) The district judge found the proffered testimony of Captain Norris to be relevant and gave Captain Norris the choice of being called as a witness and excused as counsel, or alternatively having the discovery material regarding the incident admitted. Captain Norris elected to have the documents admitted.

One of the documents that was admitted into evidence in lieu of his testimony was a May 22, 2002, memorandum regarding the May 3 incident. The memorandum is a form document that was filled out by Captain Norris. On it, a line was checked next to the statement that "[t]here is insufficient probable cause to believe the subject(s) committed the offense." Further, there was a statement on the form that "[t]he offense is Founded/Unfounded." The word "Founded" was stricken through and the word "Unfounded" was circled. The memorandum was signed by Captain Norris.

Mr. Wooten contends the district court erred by admitting any evidence regarding the May 3 incident because: (1) the government's failure to disclose, at the pretrial conference, Captain Norris's involvement in the decision not to

- 10 -

prosecute Mr. Wooten for this May 3 incident violated his due process rights under the Fifth and Sixth Amendments under *Brady v. Maryland*, 373 U.S. 83 (1963); and (2) the fact that the district court did not allow the defense to call Captain Norris as a witness at trial denied Mr. Wooten's right to compulsory process for obtaining witnesses under the Sixth Amendment. The court reviews the district court's exclusion of evidence for an abuse of discretion, *United States v. Mathis*, 357 F.3d 1200, 1208 (10th Cir. 2004); *United States v. Powell*, 226 F.3d 1181, 1198 (10th Cir. 2000), its decision regarding an alleged *Brady* violation de novo, *United States v. Pearl*, 324 F.3d 1210, 1215 (10th Cir.), *cert. denied*, 123 S. Ct. 2591 (2003); *United States v. McElhiney*, 275 F.3d 928, 932 (10th Cir. 2001), and its decision regarding whether a constitutional violation occurred de novo, *United States v. Hernandez*, 333 F.3d 1168, 1172 (10th Cir.), *cert. denied*, 124 S. Ct. 490 (2003); *United States v. Mackovich*, 209 F.3d 1227, 1236 (10th Cir. 2000).

To establish a *Brady* violation, a defendant must demonstrate that "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *Scott v. Mullin*, 303 F.3d 1222, 1230 (10th Cir. 2002) (quotation omitted); *see also Pearl*, 324 F.3d at 1215 (listing these same three elements). Evidence is not suppressed within the meaning of *Brady* if it is made known and available to the defense prior to trial.

*Spears v. Mullin*, 343 F.3d 1215, 1256 (10th Cir. 2003), *cert. denied*, 124 S. Ct. 1615 (2004); *see, e.g.*, *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999) (finding no *Brady* violation where the evidence was available to the defendant through the government's open file policy). The May 22 memorandum was disclosed in discovery on July 22, 2002. Thus, Mr. Wooten's *Brady* claim fails on the first of the three *Brady* elements because the prosecution did not suppress the May 22 memorandum. Although Mr. Wooten contends the prosecution should have expressly announced this evidence during the pretrial conference regarding the 404(b) evidence, *Brady* does not require the prosecution to disclose information in a specific form or manner. *Spears*, 343 F.3d at 1256; *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1011 (10th Cir. 1999).

Insofar as Mr. Wooten's constitutional right to compulsory process is concerned, the Sixth Amendment guarantees a criminal defendant "compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. A "'defendant's right to due process and compulsory process includes the right to present witnesses in his or her own defense.'" *Powell*, 226 F.3d at 1199 (quoting *Richmond v. Embry*, 122 F.3d 866, 871 (10th Cir. 1997)). Nevertheless, restrictions on a defendant's ability to present witnesses are permissible. *Id.* In evaluating the district court's exclusion of the proffered testimony, the court asks, first, whether the testimony was relevant and, if so, whether the government's

interests in excluding the evidence outweighed the defendant's interest in having the evidence admitted. *Id.* Then, the court examines whether the excluded testimony was material—that is, whether it was of such an exculpatory nature that its exclusion affected the trial's outcome. *Id.* In this case, the district court found that Captain Norris's testimony on the issue would have been relevant, and the government does not challenge this determination on appeal. Thus, the court will examine whether the government's interest in excluding the evidence outweighed Mr. Wooten's interest in having the evidence admitted.

The government has a substantial interest in not allowing its prosecutors to testify because doing so generally requires disqualification of the prosecutor. *See generally* ABA Model Rules of Professional Conduct Rule 3.7 (prohibiting a lawyer from serving as an advocate and a witness); *United States v. Birdman*, 602 F.2d 547, 553 & n.18 (3d Cir. 1979) (noting that the prosecutor should generally withdraw from participation in the trial where appearance as a witness is unavoidable). Indeed, the district judge in this case stated that he would not have allowed Captain Norris to proceed as a prosecutor if he had elected to testify. Such disqualifications would, of course, be tremendously inefficient and disruptive to the prosecution of criminal cases. By comparison, Mr. Wooten had little, if any, interest in having Captain Norris testify. Captain Norris lacked any personal knowledge regarding the incident and thus presumably could only have

testified about his decision not to prosecute the case. The May 22 memorandum evidenced the fact that Captain Norris did not find probable cause sufficient to warrant prosecuting Mr. Wooten for the May 3 incident because he determined that Ms. Wooten's allegations were unfounded. Thus, the May 22 memorandum accomplished as much (and perhaps more) for Mr. Wooten than if he had been permitted to call Captain Norris to the stand. Thus, the government's interest in excluding Captain Norris's testimony substantially outweighed Mr. Wooten's interest in calling him as a witness. Accordingly, no violation of Mr. Wooten's right to compulsory process occurred. *See, e.g.*, *United States v. Dupuy*, 760 F.2d 1492, 1497-98 (9th Cir. 1985) (finding no violation of the defendants' constitutional right to compel testimony of witnesses where the district court declined to allow the prosecutor to be used as a witness but allowed the defendants to use the prosecutor's notes on cross-examination).

Absent a *Brady* or compulsory process violation, then, the court is left to review the district court's handling of the matter for an abuse of discretion. The district court did not abuse its discretion by admitting evidence regarding the May 3 incident. The district court found that evidence concerning a series of incidents between Mr. Wooten and Ms. Wooten, which happened to include evidence regarding the May 3 incident, was relevant to the issues of Mr. Wooten's intent, Ms. Wooten's lack of consent (which was relevant to the kidnapping charge), and

the long-standing personal animosities between Mr. Wooten and Ms. Wooten. (Tr. at 24.) Thus, this evidence was admitted for a proper purpose other than to show that Mr. Wooten acted in conformity with these prior bad acts on the night in question. *See* Fed. R. Evid. 404(b) (stating evidence of prior bad acts may be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident").

Further, the district court did not abuse its discretion by declining to allow Captain Norris to be called as a witness regarding the May 3 incident. It is well settled that the district court may decline to allow the defendant to call the prosecutor as a witness "if it does not appear the prosecutor possesses information vital to the defense." *United States v. Troutman*, 814 F.2d 1428, 1439 (10th Cir. 1987) (quotation omitted). Here, Captain Norris did not possess information vital to the defense. The May 22 memorandum was an adequate substitute for his testimony regarding his decision not to prosecute Mr. Wooten for the May 3 incident. *See, e.g.*, *Troutman*, 814 F.2d at 1439-40 (finding the district court properly denied a motion to disqualify where the attorney's testimony was not vital to the defense because the evidence could be obtained through other witnesses); *see also, e.g.*, *United States v. Watson*, 952 F.2d 982, 986-87 (8th Cir. 1991) (stating a defendant seeking to call a prosecutor as a witness must

- 15 -

demonstrate the prosecutor's testimony is vital to the case and that the defendant will be unable to present the same or similar facts from another source).

## C. Restitution Order

The district court imposed a restitution order in the amount of $17,751.58 based on the probation officer's pre-sentence report. Mr. Wooten contends this order violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The court reviews the legality of the restitution order de novo. *United States v. Osborne*, 332 F.3d 1307, 1314 (10th Cir. 2003); *United States v. Monts*, 311 F.3d 993, 1001 (10th Cir. 2002), *cert. denied*, 538 U.S. 938 (2003).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added). The district court in this case ordered restitution pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA"). The MVRA requires the district court to impose restitution in "an amount equal to--(i) the greater of--(I) the value of the property on the date of the damage, loss, or destruction; or (II) the value of the property on the date of sentencing, less (ii) the value . . . of any part of the property that is returned." *Id.* § 3663A(b)(1)(B); *see also id.* § 3664(f)(1)(A) (requiring the district court to

- 16 -

order restitution "in the full amount of each victim's losses as determined by the court").

In this case, the district court ordered restitution in the amount of $17,751.58. This accounted for: $14,705.41 to Ms. Portee's insurance company, which is the amount the company paid for her totaled car; $2,796.17 to the insurance company of Andrew Douglas, who was the owner of the truck Mr. Wooten was driving on the night he committed the offenses, which is the amount the insurance company paid for damage to Mr. Douglas's truck; and $250 to Mr. Douglas to reimburse him for his out-of-pocket deductible for the damage to his truck. On appeal, Mr. Wooten does not contend that any of these amounts exceeded the value of the damage to the crime victims' property. Accordingly, *Apprendi* does not apply to the restitution order. *See, e.g.*, *United States v. Ross*, 279 F.3d 600, 609-10 (8th Cir. 2002) (holding *Apprendi* did not apply to a restitution order because the MVRA does not prescribe a maximum restitution amount and because the order did not exceed the scope of the indictment); *United States v. Bearden*, 274 F.3d 1031, 1042 (6th Cir. 2001) (holding *Apprendi* did not apply to a restitution order in an amount equal to the value of the stolen property); *see also, e.g.*, *United States v. Syme*, 276 F.3d 131, 159 (3d Cir.) (holding *Apprendi* does not apply to restitution orders under the Victim and Witness Protection Act, 18 U.S.C. § 3663 ("VWPA"), because "[t]he statute . . . does not

prescribe a maximum amount"), *cert. denied*, 537 U.S. 1050 (2002); *United States v. Behrman*, 235 F.3d 1049, 1054 (7th Cir. 2000) (holding *Apprendi* does not apply to restitution orders under the VWPA and reasoning the statute is like one "that permits the judge to impose any term of years"). [1]

Mr. Wooten cites *United States v. Edwards*, 162 F.3d 87 (3d Cir. 1998), for the proposition that restitution under the MVRA constitutes punishment for purposes of the Ex Post Facto Clause. *Id.* at 89-92. It is true that courts commonly regard such restitution orders as criminal penalties. *See United States v. Cliatt*, 338 F.3d 1089, 1094 (9th Cir. 2003) (referring to restitution under the MVRA as a criminal penalty); *Ross*, 279 F.3d at 609 (holding restitution is a criminal penalty for purposes of *Apprendi*); *Syme*, 276 F.3d at 159 (same). *But see Behrman*, 235 F.3d at 1054 (noting the Seventh Circuit regards restitution as a "classic civil remedy"). The issue here, however, is not whether the restitution order was a criminal penalty for purposes of *Apprendi*. Even if the court were to conclude that it is a criminal penalty, Mr. Wooten does not contend that the

---

[1] Following the Supreme Court's recent opinion in *Blakely v. Washington*, 124 S. Ct. 2531 (2004), Mr. Wooten submitted a supplemental authority letter pursuant to Fed. R. App. P. 28(j) in which he contends that the restitution order also violates *Blakely*. Mr. Wooten's *Blakely* argument fails for the same reason as his *Apprendi* argument, which is that the amount of the restitution award does not exceed any prescribed statutory maximum.

restitution order exceeds the value of the damaged property, and it is for that reason that *Apprendi* does not apply here.

Mr. Wooten also contends the restitution order violated the Equal Protection Clause of the Fifth Amendment because the MVRA allows the court to decline to award restitution when doing so would be impracticable or too complicated, and thus some criminal defendants such as those convicted of complicated financial crimes will not be required to pay restitution while other types of defendants will bear the burden of restitution. Mr. Wooten devotes only one short paragraph to this argument, and the only case he cites in support of this argument is *Buckley v. Valeo*, 424 U.S. 1 (1976), for the very basic proposition that "[e]qual protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment." *Id.* at 93. The court will not consider such "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *Murrell v. Shalala*, 43 F.3d 1388, 1390 n.2 (10th Cir. 1994) (quotation omitted); *see, e.g.*, *Femedeer v. Haun*, 227 F.3d 1244, 1255 (10th Cir. 2000) (declining to consider argument where only a perfunctory reference to the issue was raised); *United States v. Kunzman*, 54 F.3d 1522, 1534 (10th Cir. 1995) (declining to consider issues that were nominally raised).

**D. Decrease in Offense Level for Acceptance of Responsibility**

Mr. Wooten contends the district court incorrectly applied the sentencing guidelines by refusing to grant him a two-level decrease in offense level for acceptance of responsibility under United States Sentencing Guideline ("U.S.S.G.") § 3E1.1 based on Mr. Wooten's mental condition, clear expressions of remorse, and post-offense rehabilitation efforts. This court reviews the district court's legal interpretation of the sentencing guidelines de novo. *United States v. Dell*, 359 F.3d 1347, 1348 (10th Cir. 2004); *United States v. Coldren*, 359 F.3d 1253, 1255-56 (10th Cir. 2004). Whether the facts of the case warrant a determination of acceptance of responsibility is a question of fact reviewed under the clearly erroneous standard of review. *United States v. Bailey*, 327 F.3d 1131, 1148 (10th Cir. 2003); *United States v. Quarrell*, 310 F.3d 664, 682 (10th Cir. 2002). "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n.5).

The district court's determination that the facts of the case did not demonstrate that Mr. Wooten was entitled to a decrease in offense level for acceptance of responsibility was not clearly erroneous. First, the district judge noted the defendant has the burden of proof on this issue, which is correct.

*United States v. Salazar-Samaniega*, 361 F.3d 1271, 1278 (10th Cir. 2004); *United States v. Marquez*, 337 F.3d 1203, 1209 (10th Cir. 2003). Further, he focused on the belated nature of Mr. Wooten's alleged acceptance of responsibility after trial, which was also proper. *United States v. Ochoa-Fabian*, 935 F.2d 1139, 1142-43 (10th Cir. 1991) (affirming the district court's denial of a decrease based on acceptance of responsibility, and observing that the district court's decision that the defendant's "effort to accept responsibility after trial was untimely is well-founded"). Then, he acknowledged the testimony of Melvyn Gerald Preisz, Ph.D., who testified that since Mr. Wooten's conviction Mr. Wooten had admitted to having serious problems, realized he did not know how to manage them, admitted he needed help, was now more stabilized by virtue of taking lithium, was suffering from post-traumatic stress disorder, and was remorseful. The district judge reasoned that although he was not discounting Dr. Preisz's testimony, acceptance of responsibility must be exhibited in some manner even though it is not in a guilty plea. He pointed out that Mr. Wooten had refused to discuss the case with his probation officer, failed to provide his written version of events as he promised he would do, and refused to sign releases for his Social Security records, tax records, and credit report. In sum, the evidence reflects that Mr. Wooten acknowledged the wrongfulness of his actions after he was convicted--nothing more--and that is insufficient to warrant a decrease in offense

level for acceptance of responsibility. *See* U.S.S.G. § 3E1.1, comment. (n.2) ("This adjustment is not intended to apply to a defendant who . . . is convicted, and only then admits guilt and expresses remorse.").

Mr. Wooten, however, contends a decrease in offense level was warranted pursuant to U.S.S.G. § 3E1.1, comment. (n.2) because putting the government to its burden of proof at trial does not automatically preclude a defendant from receiving an acceptance-of-responsibility reduction. Actually, though, note 2 goes on to explain that a reduction should be granted where the defendant puts the government to its burden of proof at trial only in "rare cases,"

> for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt ( *e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

*Compare Salazar-Samaniega*, 361 F.3d at 1280-82 (finding the district court's acceptance-of-responsibility adjustment was clearly erroneous because a decrease in offense level was not warranted under note 2 where the defendant "attempted at trial to deny a key factual element of the crime"), *with United States v. Gauvin*, 173 F.3d 798, 806 (10th Cir. 1999) (finding the district court's acceptance-of-responsibility reduction was not clearly erroneous under note 2 because the defendant admitted to all of the conduct with which he was charged and disputed whether his acknowledged factual state of mind met the legal criteria of intent).

Thus, the complete text of this note reveals that the district court's decision declining to grant Mr. Wooten a decrease for acceptance of responsibility based on note 2 was not clearly erroneous. At trial, Mr. Wooten vehemently challenged his factual guilt ( *see, e.g.* , Tr. at 576-77 (presentation of evidence by defendant), 592-614 (closing arguments by defendant)). On appeal, he does not contend that he went to trial to preserve issues unrelated to his factual guilt or that any pre-trial statements or conduct evidenced his acceptance of responsibility. Thus, Mr. Wooten has failed to demonstrate that this was the type of rare case contemplated by note 2.

**E.     Downward Departure**

Lastly, Mr. Wooten contends the district court erred by refusing to grant him a downward departure pursuant to U.S.S.G. § 5K2.10 based on Ms. Wooten's role in perpetuating a volatile and co-dependent relationship with Mr. Wooten. This court does not have jurisdiction to review a district court's discretionary refusal to depart from the sentencing guidelines on the ground that the specific circumstances do not warrant a departure. *United States v. Sarracino* , 340 F.3d 1148, 1180 (10th Cir. 2003), *cert. denied* , 124 S. Ct. 1105 (2004); 124 S. Ct. 1109 (2004); *United States v. Castillo* , 140 F.3d 874, 887 (10th Cir. 1998). Rather, the court has jurisdiction to review the district court's denial of a downward departure only when the district judge concluded that he or she did not have

- 23 -

authority to depart from the sentencing guidelines. *Sarracino*, 340 F.3d at 1180; *United States v. Busekros*, 264 F.3d 1158, 1159 (10th Cir. 2001). The district court's statement that it lacks authority to grant the requested downward departure must be unambiguous. *United States v. Radcliff*, 331 F.3d 1153, 1163 (10th Cir.), *cert. denied*, 124 S. Ct. 446 (2003).

In this case, the district court thoroughly considered Mr. Wooten's argument and rejected it because the district judge believed no departure was warranted. Mr. Wooten has not directed the court's attention to any statement by the district judge that clearly and unambiguously indicates he believed he did not have the authority to depart if he had wished to do so. Accordingly, the court must dismiss this aspect of Mr. Wooten's appeal for lack of jurisdiction.

### III. Conclusion

For these reasons, we AFFIRM the district court's conclusion and DISMISS for lack of jurisdiction the aspect of Mr. Wooten's appeal relating to a downward departure. [2]

---

[2] Appellee's motion to supplement the record is granted.