FILED
United States Court of Appeals
Tenth Circuit

January 21, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CHICK ARTHUR LITTLE,

    Defendant-Appellant.

No. 08-6012

(D.C. No. 5:06-CR-00299-HE-2)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **BALDOCK,** and **O'BRIEN**, Circuit Judges.

---

Elk City, Oklahoma purchased an abandoned train depot, requiring extensive renovations, for municipal use. Defendant Chick Arthur Little headed a municipal work crew selected to perform an overhaul of the depot. Little's crew consisted of at least one other city employee, and a number of inmates of the Oklahoma Department of Corrections assigned to the Elk City Community Work Center. As part of their work on the depot, these inmates were required to remove a large quantity of insulation related to the depot's boiler system. Authorities eventually determined that this insulation contained asbestos. Evidence indicating Defendant was aware of the possibility of asbestos in the depot, and yet failed to

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

take adequate measures to protect the health of inmates, led to federal authorities initiating criminal proceedings against him.

Ultimately, a grand jury charged Defendant with (1) knowingly causing asbestos to be released into the ambient air, thus placing others in imminent danger of death or serious bodily injury, in violation of 42 U.S.C. § 7413(c)(5)(A) (Count One); (2) knowingly violating the waste disposal standard for asbestos, in violation of 42 U.S.C. § 7413(c)(1) (Count Two); and (3) knowingly and willfully making a materially false statement in a matter within the jurisdiction of the executive branch of the Government of the United States, in violation of 18 U.S.C. § 1001(a)(2) (Count Four). The petit jury found Defendant guilty of negligent endangerment; a lesser included offense of Count One, see 42 U.S.C. § 7413(c)(4); acquitted Defendant on Count Two; and returned a guilty verdict on Count Four. At sentencing, the district court imposed an eight-month term of imprisonment on Counts One and Four, to run concurrently, and imposed a special assessment of $125.00.

Defendant raises three issues on appeal. First, Defendant alleges the district court erred in denying his Motion to Dismiss the Indictment based on the destruction of exculpatory evidence. Second, Defendant challenges the sufficiency of the evidence supporting his convictions on Counts One and Four. Third, Defendant disputes the reasonableness of his eight-month sentence. We have jurisdiction under 28 U.S.C. § 1291. Finding no merit to Defendant's contentions, we affirm.

I.

We first address Defendant's argument that the district court erred in denying his Motion to Dismiss the Indictment based on the destruction of various samples of insulation from the depot, which tested positive for asbestos. Samples of the insulation in the depot were initially taken by an employee of the Oklahoma Department of Labor, as part of that department's regulatory investigation into whether state law required a licensed contractor to remove the insulation. Subsequently, samples were also taken by an employee of the Oklahoma Department of Central Services, after Elk City hired that agency to remove the insulation from the building. Tests on these samples were performed by QuanTEM Laboratories. At trial, Jeff Mlekush, QuanTEM Laboratories' operations manager, affirmed that the insulation from the depot contained a relatively high percentage of asbestos – somewhere between twenty-five to thirty percent. Pursuant to laboratory policy, the samples from the depot were destroyed after testing.

"We review the denial of [a] motion to dismiss the indictment for an abuse of discretion." United States v. Thompson, 518 F.3d 832, 861 (10th Cir. 2008). Defendant argues that his inability to obtain an independent assessment of the insulation samples constitutes a violation of due process, which justifies our dismissal of the grand jury's indictment. We disagree. "For [the] destruction of evidence to rise to the level of affecting a defendant's Due Process rights under California v. Trombetta, the evidence must both possess [1] an exculpatory value that was apparent before the evidence was destroyed, and [2] be of such a nature that the defendant would be unable to obtain comparable evidence by

3

other reasonably available means." United States v. Pearl, 324 F.3d 1210, 1215 (10th Cir. 2003). Here, any potentially exculpatory value the insulation samples may have possessed was not "apparent before the evidence was destroyed." Id. As the district court aptly explained, the insulation samples in question were taken by Oklahoma authorities for administrative purposes completely unrelated to the prosecution of Defendant. Further, Defendant has failed to point us to any evidence that federal or state authorities, during the relevant period, had any intention of bringing criminal charges against him. The samples' potential exculpatory value was, therefore, not "apparent." Consequently, Defendant's Trombetta claim must fail.

Nor has Defendant met the requirements for a due process violation set forth in Arizona v. Youngblood, 488 U.S. 51 (1988). Where the exculpatory value of evidence is not apparent before its destruction, a due process violation occurs only if the defendant demonstrates the Government destroyed the evidence in bad faith. See United States v. Beckstead, 500 F.3d 1154, 1159 (10th Cir. 2007) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."). The insulation samples in this case were destroyed, pursuant to laboratory policy, because the state employees who submitted them for testing failed to request that they be preserved. Far from demonstrating bad faith, the record demonstrates that no preservation request was made because the state employees in question lacked any knowledge that criminal proceedings were on the horizon. Because Defendant cannot demonstrate any bad faith on the part of the Government, his claim under

4

Youngblood also fails.

II.

We next turn to Defendant's assertion that the district court should have granted his Motion for Acquittal because the Government presented insufficient evidence to justify his convictions on Counts One and Four. Our review of the sufficiency of the evidence supporting a criminal conviction is de novo. See United States v. Vigil, 523 F.3d 1258, 1262 (10th Cir. 2008). As we explained in United States v. Bowen, 527 F.3d 1065, 1076 (10th Cir. 2008):

> "The scope of our inquiry is limited to determining whether a reasonable jury could find the defendant guilty beyond a reasonable doubt, if it viewed all direct and circumstantial evidence, as well as all reasonable inferences drawn from that evidence, in the light most favorable to the Government. Thus, our review of the evidence the Government presented at trial is highly deferential. We may not assess the credibility of witnesses or weigh conflicting evidence, as these tasks are exclusively for the jury. Accordingly, we may reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

(citations omitted).

A.

First, Defendant contends that the Government presented insufficient evidence for the jury to conclude, beyond a reasonable doubt, that he negligently placed inmates working on the depot in imminent danger of death or serious bodily injury. The record in this case, however, reveals that the jury heard sufficient expert testimony on which to base this conclusion. For example, Dr. Christopher Weis, a board certified toxicologist, testified that the "tremendous intensity" of the asbestos to which the inmates were exposed "over a very

5

short time . . . likely overwhelmed their bodies' natural ability to remove these fibers," thus exposing the inmates to a heightened risk of developing "serious debilitating and potentially lethal asbestos-related disease[s]." Dr. Steven Hessl, a physician, further testified that exposure to the asbestos in the depot placed inmates at a "substantial risk" of developing "Mesothelioma and lung cancer."

In tandem, the testimony of these experts provided the jury with a sufficient basis to conclude Defendant's actions placed the inmates in imminent danger of death or serious bodily injury. The relevant instruction submitted to the jury, which Defendant does not challenge on appeal, provided that "imminent danger" constituted "the existence of a . . . combination of conditions which could reasonably be expected to cause death or serious bodily injury." Furthermore, this instruction clarified that the danger to which the inmates were exposed must be "an immediate result" of Defendant's "conduct," but that this danger might "involve a harm which may not ultimately ripen into death or serious bodily injury for a lengthy period of time, if at all." Based on the expert testimony described above, a reasonable jury could conclude (1) that the inmates' exposure to the asbestos present in the depot was an immediate result of Defendant's conduct; and (2) that this exposure created a combination of conditions which could reasonably be expected, absent a remedy, to cause the inmates to experience serious bodily injury or death.[1]

---

[1] Defendant is mistaken in suggesting that the evidence was insufficient to support his conviction on Count One because none of the Government's witnesses could testify, with certainty, that the inmates would experience serious bodily injury or death as a result of their exposure to the asbestos in the depot. As explained above, the jury was only required to find

(continued...)

6

Defendant's arguments to the contrary are unpersuasive. Based on countervailing expert testimony the defense presented at trial, Defendant argues the jury could not reasonably rely on the testimony of the Government's expert witnesses. But Defendant does not challenge the admissibility of the Government's experts' testimony on appeal. See Fed. R. Evid. 702. As such, the jury was free to credit the Government's experts above those presented by the defense. See Abilene Retail No. 30, Inc. v. Bd. of Comm'rs, 492 F.3d 1164, 1188 (10th Cir. 2007) (noting that a "battle of the experts . . . requires a . . . trier of fact to resolve"); United States v. Oliver, 278 F.3d 1035, 1043 (10th Cir. 2001) (noting that "it is solely within the province of the jury . . . to weigh . . . expert testimony").

We emphasize that "the jury . . . not the court . . . is the fact finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable." Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc., 703 F.2d 1152, 1158 (10th Cir. 1981). Defendant is surely wrong in assuming that we may "reweigh the evidence for the jury." United States v. Russell, 109 F.3d 1503, 1506 (10th Cir. 1997). On appeal, we are "not free to . . . set aside the jury verdict merely because the jury could have drawn different inferences or conclusions." Metcalfe v. Atchison, Topeka & Santa Fe Ry. Co., 491 F.2d 892, 898 (10th Cir. 1974). Defendant's conviction must,

[1](...continued)
that the inmates' exposure to conditions in the depot *could reasonably be expected* to have such an effect.

therefore, stand.

B.

Second, Defendant challenges the sufficiency of the evidence supporting his conviction for making a false statement to investigators. This charge is predicated on Defendant's statement to three employees of the Oklahoma Department of Environmental Quality that the waste from the depot renovation project was deposited in the Elk City Municipal Landfill, a facility authorized to receive materials containing asbestos. In a subsequent interview with an investigator from the Oklahoma Attorney General's Office and a representative of the Environmental Protection Agency, however, Defendant contradicted himself in admitting that waste from the depot had been taken to the Highway 6 dump, a facility that was not authorized to receive materials containing asbestos.

The Government presented testimony detailing these two conflicting statements at trial, thus providing the jury with an ample basis for finding Defendant guilty of making a false statement to investigators. Contrary to Defendant's assertions, we may not reassess the credibility of the Government's witnesses on appeal. See United States v. Caraway, 534 F.3d 1290, 1295 (10th Cir. 2008) ("[T]he determination of credibility is exclusively for the jury."). Our role is "simply [to] determine whether the evidence, if believed, would establish each element of the crime." Id. That standard is clearly met here. Consequently, Defendant is "not entitled to a reversal of his conviction for insufficient evidence." Id.

III.

8

Finally, Defendant disputes the reasonableness of his eight-month term of imprisonment. Our "review [of] the reasonableness of sentencing decisions, whether inside, just outside, or significantly outside the Guidelines range" is conducted under the "deferential abuse-of-discretion standard." United States v. Huckins, 529 F.3d 1312, 1317 (10th Cir. 2008). We remain mindful that "the Supreme Court [recently] reaffirmed that district courts have wide discretion in choosing the factors [they] consider during sentencing." United States v. Pinson, 542 F.3d 822, 838 (10th Cir. 2008).

The bases for Defendant's sentencing challenge are unclear. Defendant lists a long litany of grounds for departure under the Sentencing Guidelines, which he suggests the district court should have used to grant him a lower sentence. But the lower end of Defendant's Sentencing Guidelines range was well above his statutory maximum term of imprisonment. The sentence the district court selected was thus necessarily below the applicable guidelines range. In any case, we may not address Defendant's arguments in this regard because we lack jurisdiction "to review a district court's discretionary decision to deny a motion for downward departure on the ground that a defendant's circumstances do not warrant the departure." United States v. Hamilton, 413 F.3d 1138, 1146 (10th Cir. 2005).

The remainder of Defendant's sentencing arguments dispute the substantive reasonableness of his sentence.[2] "[S]ubstantive reasonableness addresses whether the length

---

[2] To the extent, if any, Defendant wishes to challenge the procedural reasonableness of his sentence, we deem this issue waived. See United States v. Wooten, 377 F.3d 1134, 1145 (10th Cir. 2004) (noting that we refuse to address "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation").

of [a] sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." Huckins, 529 F.3d at 1317. Defendant's convictions carried a statutory maximum of twelve-months imprisonment on Count One and sixty-months imprisonment on Count Four. Our review of the record in this case reveals no reason to doubt that the district court's imposition of an eight-month sentence on both counts, to run concurrently, was substantively reasonable. See United States v. Donohoe, 458 F.2d 237, 239 (10th Cir. 1972) (noting that "[w]ide discretion in imposition of sentence reposes in the trial judge"). Accordingly, we reject Defendant's challenge to the substantive reasonableness of his sentence.

AFFIRMED.[3]

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge

---

[3] Oral argument having been held in this case on November 20, 2008, Defendant's Motion for Oral Argument is hereby GRANTED.