FILED
United States Court of Appeals
Tenth Circuit

April 23, 2021

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

In re: GORDON NITKA,

    Debtor.

-----------------------------

GORDON BEECHER NITKA,

    Plaintiff - Appellant,

v.

DEPARTMENT OF EDUCATION,

    Defendant - Appellee.

No. 20-1270
(BAP No. CO 20-002)

_____

## ORDER AND JUDGMENT[*]

_____

Before **MORITZ**, **BALDOCK**, and **EID**, Circuit Judges.

_____

Gordon Nitka initiated an adversarial proceeding in bankruptcy court against

the Department of Education ("DOE"), seeking discharge of approximately $200,000

in law school student loans based on "undue hardship" under 11 U.S.C. § 523(a)(8).

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The bankruptcy court granted summary judgment to DOE, and the Bankruptcy Appellate Panel ("BAP") affirmed. Nitka appeals pro se from the BAP's decision.[1] Exercising jurisdiction under 28 U.S.C. § 158(d)(1), we affirm.

## BACKGROUND

Nitka graduated from Colorado College in 2005 with degrees in English and Biology. During college, he worked as a host for the school's administration, a physiology and anatomy tutor, a surgical paraprofessional, and a bartender and server at a resort. After graduating, he continued working at the resort before taking a position as the co-director of a hospitality center at the 2006 Winter Olympics in Italy. Upon returning to Colorado, he resumed his jobs at the resort and also began working in nightclubs, first as security and later as a manager.

In 2010, Nitka enrolled at Phoenix School of Law, later renamed the Arizona Summit Law School. He financed his education with student loans, executing two master promissory notes. While in school, he held several paid positions, including in the legal field and as a fitness coach. After graduating, he worked as a contract employee at a law firm, earning $25 per hour as a law clerk and rising to the rank of

---

[1] "[W]e generally construe pro se pleadings liberally" but have not "extend[ed] the same courtesy to . . . licensed attorney[s]." *Comm. on the Conduct of Att'ys v. Oliver*, 510 F.3d 1219, 1223 (10th Cir. 2007) (internal quotation marks omitted). The parties dispute whether, and to what extent, we should liberally construe Nitka's filings, considering he is a law school graduate but not a licensed attorney. Because it does not affect the outcome of the case, we liberally construe Nitka's filings. But he still must "follow the same rules of procedure that govern other litigants," and we "cannot take on the responsibility of serving as [his] attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation marks omitted).

2

firm director. He took the Arizona bar exam twice but did not pass. To supplement his income, Nitka (1) continued fitness coaching until November 2015, earning up to $90 per hour; (2) served as an advisor to a start-up fitness company, earning equity compensation; and (3) worked twenty to thirty hours per week selling commission-based insurance for MassMutual from August 2014 to January 2018.

In May 2018, the law firm terminated Nitka's employment. He has since been unemployed, with the exception of earning approximately $3,000 over the course of a couple months as a roofing salesman. He unsuccessfully applied for several jobs and testified in May 2019 that he had ceased submitting applications, instead focusing his time on (1) building a mobile phone application for the restaurant industry, and (2) converting a bus into a vacation rental that he will park near ski resorts. He lives rent-free with his mother and has about $32,000 in retirement accounts. When he has income, he spends about $200 per month on food and $60 on a cell phone plan.

As of November 2019, Nitka's student loan debt was $209,716.48. He made no payments on the loans in 2013 and obtained a deferral for most of 2014. In June 2015, he began participating in an income-driven repayment program that reduced his monthly obligation. Still, he did not make any payments in 2015, despite earning $61,901, with an adjusted gross income of $39,156 and taxable income of $28,856. In 2016, he made six payments of $21.82, totaling $130.92, although his gross income was $83,000, with taxed Social Security earnings of $54,643. He earned $31,180 in 2017 and made five payments of $21.82, totaling $109.10. He made no payments in 2018, when he earned $8,381, with an adjusted gross income of $8,010.

3

Nitka has paid a total of only $240.02, but DOE has asserted he remains eligible for an income-based program, under which his balance would be forgiven after 25 years.

In July 2018, Nitka, then 36 years old, filed a petition under Chapter 7 of the Bankruptcy Code and an adversary proceeding to have his loans discharged. After several discovery disputes, DOE moved for summary judgment. Nitka opposed the motion and moved for sanctions, claiming DOE made factual misrepresentations. The bankruptcy court denied Nitka's motion for sanctions and granted DOE's motion for summary judgment. The BAP affirmed, and Nitka appealed to this court.

## DISCUSSION

"In our review of BAP decisions, we independently review the bankruptcy court decision," *In re Albrecht*, 233 F.3d 1258, 1260 (10th Cir. 2000), assessing legal conclusions de novo and factual findings for clear error, *see Borgman v. Dunckley (In re Borgman)*, 698 F.3d 1255, 1259 & n.5 (10th Cir. 2012). Nitka raises several challenges to the bankruptcy court's judgment. None are persuasive.

### I. Procedural Rulings Prior to DOE Moving for Summary Judgment

First, Nitka contends the bankruptcy court erred in granting DOE's motion under Fed. R. Civ. P. 37 to prohibit him from using exhibits or witnesses, other than himself, at trial due to his failure to fully and timely comply with the scheduling order's requirements for serving trial exhibits. As the BAP observed, the bankruptcy court considered Nitka's exhibits in ruling on DOE's motion for summary judgment. Because we conclude that the court properly granted summary judgment to DOE, the issue of what evidence would be admitted at trial is moot.

4

Nitka also contends the bankruptcy court erred in forcing him to choose between foregoing reliance on his medical conditions in support of his hardship claim or submitting to reopened discovery. Specifically, as a result of Nitka's shifting positions throughout the proceedings regarding his medical conditions and their relation to his hardship claim, DOE moved to prohibit him under Fed. R. Civ. P. 37 from offering evidence of medical conditions or, alternatively, to reopen discovery to seek information related to such conditions. The bankruptcy court found that Nitka had abused the discovery process and gave him the option of foregoing reliance on medical conditions or submitting to further discovery. Based on Nitka's commitment not to "rais[e] any medical issues in support of [his] case," R., vol. 2 at 823, the court denied the motion to reopen discovery and granted the motion to prohibit evidence of medical conditions. Although Nitka now contends the court abused its discretion, he made his choice and cannot complain of any invited error.[2] *See John Zink Co. v. Zink*, 241 F.3d 1256, 1259 (10th Cir. 2001) ("The invited error doctrine prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was error." (internal quotation marks omitted)).

## II. Contents of DOE's Motion for Summary Judgment

Next, Nitka contends that DOE made false statements of fact and that the bankruptcy court erred in not granting his motion for sanctions. Because he moved

---

[2] Nitka states, without argument or authority, that he was subjected to a "forced waiver." Aplt. Opening Br. at 62. We will not consider such a perfunctory contention. *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004).

for sanctions under Fed. R. Civ. P. 11, the court applied "Fed. R. Bankr. R. 9011, which is derived from Fed. R. Civ. P. 11." *Masunaga v. Stoltenberg (In re Rex Montis Silver Co.)*, 87 F.3d 435, 438 (10th Cir. 1996). The bankruptcy court denied the motion because Nitka failed to follow the "safe harbor" provision, which requires that the non-movant be given notice and an opportunity to cure the allegedly offending conduct. Fed. R. Bank. P. 9011(c)(1)(A); *cf.* Fed. R. Civ. P. 11(c)(2). Nitka does not claim he complied with the "safe harbor" provision but, instead, argues it does not apply because he filed his motion under Fed. R. Civ. P. 56(c)(2). However, he based his motion only on Fed. R. Civ. P. 11(c)(2), with no mention of Fed. R. Civ. P. 56(c)(2). *See* R., vol. 2 at 861. In any event, Fed. R. Civ. P. 56(c)(2), which allows a party to object to a summary judgment motion, does not address sanctions. Accordingly, we find no abuse of discretion by the bankruptcy court.[3]

Nitka also contends the bankruptcy court abused its discretion by not striking the declaration of DOE loan analyst Christopher Bolander. He argues that DOE offered Bolander as an expert under Fed. R. Evid. 702 and that because DOE previously disclosed an expert, Bolander's declaration violated the scheduling order, which limited each side to one expert. Nitka also argues the court should have struck the declaration because DOE did not disclose Bolander as an expert under Fed. R. Civ. P. 26(a)(2)(A). However, "Bolander based his declaration on his

---

[3] We decline to consider Nitka's conclusory assertion, unsupported by argument or authority, that the court erred in not imposing sanctions sua sponte. *See Wooten*, 377 F.3d at 1145.

6

position at [DOE] and his review of [Nitka's] loan information and payment history," and he "described facts as they pertain to [Nitka's] student loan[s], including the promissory loans, the outstanding balance, the payment history and switch to alternative repayment plans, and details regarding [DOE's] options for repayment." R., vol. 1 at 28. Our precedent suggests this testimony—if opinion testimony at all[4]—was lay testimony under Fed. R. Evid. 701, not expert testimony under Fed. R. Evid. 702, *see Ryan Dev. Co., L.C. v. Ind. Lumbermens Mut. Ins. Co.*, 711 F.3d 1165, 1170-71 (10th Cir. 2013) (noting "[a] lay witness accountant may testify [under Fed. R. Evid. 701] on the basis of facts or data perceived in his role as an accountant based on his personal knowledge of the company" (internal quotation marks omitted)). Therefore, the bankruptcy court did not abuse its discretion in refusing to strike the declaration.

Finally, Nitka objected to DOE's motion for summary judgment on the grounds that it relied on portions of his deposition transcript and that he lacked the funds to obtain his own complete copy. In particular, he moved the court to deny or delay ruling on the summary judgment motion because he could not "present facts essential to justify its opposition" without a copy of the transcript. Fed. R. Civ. P. 56(d)(1). He insists he needed a copy because "DOE used select, out-of-context excerpts." Aplt. Opening Br. at 64. The court denied his request as (1) procedurally

---

[4] *See United States v. Kearn*, 863 F.3d 1299, 1307 n.3 (10th Cir. 2017) (stating testimony providing "facts, not opinions," is not subject to Fed. R. Evid. 701 *or* 702).

7

defective, because it was not supported by an "affidavit or declaration,"

Fed. R. Civ. P. 56(d); and (2) without merit, because Nitka knew or should know

what was said at his own deposition. He contests the procedural ruling but not the

merits ruling, and thus, his challenge to the denial of his Fed. R. Civ. P. 56(d)(1)

motion fails. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004)

(affirming summary judgment where appellant failed to appeal alternative basis for

ruling).

Nitka also contends DOE was required to produce the entire transcript based

on Fed. R. Evid. 106, which provides "[i]f a party introduces all or part of a writing

or recorded statement, an adverse party may require the introduction, at that time, of

any other part—or any other writing or recorded statement—that in fairness ought to

be considered at the same time." But this rule "does not necessarily require

admission of an entire statement, writing or recording" but "only those portions

which are relevant to an issue in the case and necessary to clarify or explain the

portion already received." *United States v. Lopez-Medina*, 596 F.3d 716, 735

(10th Cir. 2010) (brackets and internal quotation marks omitted). Nitka has not

identified which additional portions of his deposition transcript needed to be

admitted, nor has he argued how he was prejudiced, and it is not our role to make the

arguments for him. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840

(10th Cir. 2005).

Last, Nitka contends the "transcript was not admissible as evidence because

DOE failed to follow Fed. R. Civ. P. 5(d)(1) which requires a deposition transcript to

be filed with the court if it is used in the proceeding." Aplt. Opening Br. at 66-67 (internal quotation marks omitted). He therefore argues the bankruptcy court erred in overruling his objection "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But plainly, the material cited by DOE could be presented in a form that would be admissible in evidence—Nitka's own testimony. In any event Fed. R. Civ. P. 5(d)(1) is a rule of procedure, not evidence, and provides that deposition transcripts "must *not* be filed until they are used in the proceeding or the court orders filing," Fed. R. Civ. P. 5(d)(1)(A) (emphasis added). The rule does not *require* an entire transcript be filed if a portion is used, and the local rules specify that only "relevant excerpt[s]" should be attached to a summary judgment motion, D. Colo. L. Bankr. R. 7056-1(c). Nitka thus has not shown the court erred in its rulings regarding the transcript.[5]

### III. Order Granting Summary Judgment

In his final argument, Nitka contends the bankruptcy court erred in granting summary judgment to DOE. We review this issue de novo and must "affirm if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Lee v. McCardle* (*In re Peeples*), 880 F.3d 1207, 1212 (10th Cir. 2018) (citation and internal quotation marks omitted). "A dispute is genuine" if the

---

[5] Nitka also states, without argument or authority, that he was entitled to copies of the transcript under Fed. R. Civ. P. 30(f) and 26(a) and that the transcript should have been struck under Fed. R. Civ. P. 12(f). We decline to consider such conclusory assertions. *See Wooten*, 377 F.3d at 1145.

evidence could reasonably result in a ruling for non-movant, and a fact is material if "it might affect the outcome." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (internal quotation marks omitted). The non-movant, however, may not rely on "[u]nsubstantiated allegations." *Bones*, 366 F.3d at 875.[6]

To establish undue hardship for discharging student loans under 11 U.S.C. § 523(a)(8), a debtor must satisfy three factors:

> (1) that the debtor cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loans;

> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

> (3) that the debtor has made good faith efforts to repay the loans.

*Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1307, 1309 (10th Cir. 2004) (internal quotation marks omitted). The test must be applied to allow discharge for "debtors who truly cannot afford to repay their loans." *Id.* at 1309.

The bankruptcy court concluded Nitka made a sufficient showing on the first and third factors to withstand summary judgment but not on the second factor. When considering this factor, a court must take "a realistic look . . . into [the] debtor's circumstances and . . . ability to provide for adequate shelter, nutrition, health care, and the like." *Id.* at 1310. A "court[] should base [its] estimation of a debtor's prospects on specific articulable facts, not unfounded optimism, and the inquiry into

---

[6] Nitka devotes much of his briefs to disputing statements in DOE's summary judgment motion. Our focus, however, remains on the court's order and the record.

future circumstances should be limited to the foreseeable future, at most over the term of the loan." *Id.* (internal quotation marks omitted). A debtor need not show "a certainty of hopelessness," but the second factor "recognizes that a student loan is viewed as a mortgage on the debtor's future." *Id.* (internal quotation marks omitted).

It is undisputed that Nitka is relatively young, has no dependents, and is highly educated. He twice failed the Arizona bar exam, but "[m]any attorneys fail the bar examination a time or two and go on to very successful careers in the law." R., vol. 4 at 2623. He alleges he cannot afford to take the Colorado bar exam, which he believes he can pass, but there is no evidence that he has inquired into a fee waiver. Nitka also has significant "experience in numerous industries," *id.*, and has proven capable of holding steady employment when he chooses. But he has taken no steps to re-enter the insurance industry, and he "just [does not] want to work in a restaurant," R., vol. 1 at 171. He averaged only one job application per month between May 2018 and May 2019, at which point he "gave up on job searching." *Id.* at 180. He instead spends 100 hours per week on "new business ventures," which "is his choice." R., vol. 4 at 2623. One project is building a mobile phone application, which, coupled with his knowledge of HTML, *see* R., vol. 1 at 147, indicates technological proficiency he could use in obtaining employment. The other project is converting a bus into a vacation rental, which he planned to complete by the end of 2020 and rent for $100 to $400 per night. Although he uses his "own two hands" to convert the bus, *id.* at 184, and plans to convert one bus per year, he

11

suggests his medical conditions hinder his job prospects. But as upheld above, he waived any reliance on his medical conditions to show undue hardship.

Ultimately, Nitka "has a strong potential for future employment should he choose to go back to work" and has not shown "his financial situation [is] unlikely to improve." R., vol. 4 at 2624. He also has not shown "his financial difficulties are likely to persist for a significant portion of the repayment period," which "is at least 21 years." *Id.*[7] He alleged he does "not plan on remaining in [his] current desperate situation" and "fully anticipate[s] pulling [him]self out of these circumstances." *Id.* (internal quotation marks omitted). And he testified he needs the discharge because of his "*current* economic situation, *now and in the near future.*" R., vol. 1 at 155 (emphasis added). That hardly bespeaks a "state of affairs . . . likely to persist for a significant portion of the repayment period of the student loans." *Polleys*, 356 F.3d at 1307. Accordingly, the court properly granted summary judgment for DOE.

---

[7] Nitka insists his "repayment period was over" as of September 2018, when, according to the rules on DOE's website, he defaulted on his loans. Aplt. Opening Br. at 34. *But see* Aplt. Opening Br. at 33 (stating he was "in default as of February 26, 2019 (270 days from the June 1, 2018 payment date)"). He thus contends that because the repayment period ended and he is unable to pay the balance in full, he has shown his "state of affairs is likely to persist for a significant portion of the repayment period," *Polleys*, 356 F.3d at 1307. But while Nitka made this argument in the BAP, he did not raise it in bankruptcy court, and he has not argued plain error. We therefore decline to consider this argument. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011).

**CONCLUSION**

The bankruptcy court's judgment is affirmed.

                                        Entered for the Court


                                        Bobby R. Baldock
                                        Circuit Judge